PAMELA K. CHEN, United States District Judge:
Plaintiff Alice Sosa ("Plaintiff") brings this action against the New York City Department of Education and Marcy Berger ("Defendants"), alleging violations of 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 2000e et seq. ("Title VII"), 42 U.S.C. § 12101 et seq. ("American with Disabilities Act" or "ADA"), New York State Executive Law § 296 et seq. ("New York State Human Rights Law"), and the New York City Administrative Code § 8-101 et seq. and § 8-107(15) ("New York *494 City Human Rights Law").[1] On June 8, 2018, Defendants filed a motion to dismiss. (Dkt. 18.) On June 12, 2018, the motion was referred to the Honorable Sanket J. Bulsara, United States Magistrate Judge, for a Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.1(d). On November 13, 2018, Judge Bulsara ordered additional briefing on the issue of exhaustion as a defense. In his Report and Recommendation ("R & R"), issued January 22, 2019, Judge Bulsara recommends that the Court (1) dismiss Plaintiff's federal claims; (2) decline to exercise supplemental jurisdiction over Plaintiff's state law claims; and (3) grant Plaintiff leave to amend. (See R & R, Dkt. 30, at 2.) On February 5, 2019, Plaintiff timely filed objections to Judge Bulsara's R & R. (See generally Plaintiff's Objections to Report and Recommendation ("Pl.'s Objs."), Dkt. 31.) Finding no merit to Plaintiff's objections and no error in Judge Bulsara's decision, the Court adopts the R & R in its entirety and grants Defendants' motion to dismiss.
STANDARD OF REVIEW
A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). With respect to a magistrate judge's recommendation on a dispositive matter, the Court reviews de novo those determinations as to which a party has specifically objected. See id. ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). However, "objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review." Frankel v. New York City , No. 06-CV-5450, 2009 WL 465645, at *2 (S.D.N.Y. Feb. 25, 2009) (quotation and brackets omitted). Accordingly, "[g]eneral or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." Chime v. Peak Sec. Plus, Inc. , 137 F.Supp.3d 183, 187 (E.D.N.Y. 2015) (quotation omitted).
DISCUSSION
Plaintiff raises four objections to the R & R. Specifically, she argues that the R & R erroneously analyzed whether she adequately alleged:
(1) that she sustained an adverse employment action, as part of her unlawful discrimination claims;
(2) that her workplace was characterized by objectively hostile conduct, as part of her hostile work environment claims;
(3) that her hostile work environment was caused by Defendants' racial animus, as part of her hostile work environment claims; and
(4) that she is similarly situated to her colleagues, as part of her disparate treatment claims.[2]
*495 On a motion to dismiss, the Court treats the elements of a prima facie case as "an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible." Barrett v. Forest Labs., Inc. , 39 F.Supp.3d 407, 429 (S.D.N.Y. 2014) (internal quotations and citation omitted); see Littlejohn v. City of New York , 795 F.3d 297, 308 (2d Cir. 2015) (the standard for prima facie case sufficiency is not a pleading requirement, but an evidentiary standard). Thus, for the Court to deem a set of factual allegations plausible, and therefore adequate to defeat a motion to dismiss, Plaintiff must allege facts that allow the Court, in substance, to infer the essential elements of a prima facie case. See Knight v. State Univ. of New York at Stony Brook , No. 13-CV-0481 (JS) (GRB), 2014 WL 4639100, at *5 (E.D.N.Y. Sept. 16, 2014).
I. Plaintiff's Objection to the R & R's Adverse Employment Action Analysis
Plaintiff objects to the R & R's conclusion that she did not sustain an adverse employment action. "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." Galabya v. N.Y.C. Bd. of Educ. , 202 F.3d 636, 640 (2d Cir. 2000). "A materially adverse change is a change in working conditions that is more disruptive than a mere inconvenience or an alteration of job responsibilities." Vale v. Great Neck Water Pollution Control Dist. , 80 F.Supp.3d 426, 434 (E.D.N.Y. 2015) (internal quotations and citation omitted). "Examples of materially adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." Feingold v. New York , 366 F.3d 138, 152 (2d Cir. 2004) (internal quotations and citations omitted).
Plaintiff alleges several adverse employment actions:
Defendants [sic] intentional failure to accommodate her medically approved and requested scheduling preferences, the partial accommodation provided, (Sosa II Compl. ¶¶ 37-39, 47-55), Berger's intentional failure to interact with Sosa during the accommodations process, (id. ¶¶ 40-46), Defendants' allegations of misconduct, (id. ¶¶ 61-63), and the inconsistent application of workplace rules as between Sosa and her colleagues, (id. ¶¶ 60).
(Pl.'s Objs. at 11.)[3] As a result of these actions, Plaintiff alleges that she has suffered significant harm including an increase in her "anxiety, depression, nausea, insomnia and bladder issues ... [and] damage to her professional reputation amongst her colleagues." (Id. ) Plaintiff argues *496 that the R & R therefore incorrectly concluded "that Defendants['] conduct was de minimis ... [and] completely disregards the impact of Defendant's [sic] conduct on the disabled plaintiff ...." (Id. at 12.) The Court disagrees with Plaintiff.
An employer's behavior does not constitute an adverse employment action because the employee sustained some generalized harm; the harm must be related to the employee's terms and conditions of employment. See Hill v. Rayboy-Brauestein , 467 F.Supp.2d 336, 352 (S.D.N.Y. 2006) (An employee must allege "material harm from [the employer's actions], such as a failure to promote or a loss of career advancement opportunities."); see also Alfano v. Costello , 294 F.3d 365, 373 (2d Cir. 2002) ("An adverse action may or may not entail economic loss but there must be a link between the discrimination and some tangible job benefits such as compensation, terms, conditions or privileges of employment.") (internal quotations and citation omitted); Smalls v. Allstate Ins. Co. , 396 F.Supp.2d 364, 371 (S.D.N.Y. 2005) ("[T[he Court also notes here that being yelled at, receiving unfair criticism, receiving unfavorable schedules or work assignments... do not rise to the level of adverse employment actions ... because they [do] not have a material impact on the terms and conditions of Plaintiff's employment.") (internal quotations and citation omitted). The conduct that Plaintiff describes, despite the significant impact that she alleges it had on her physical and mental health, does not rise to such a level as to constitute a "materially adverse change in the terms and conditions of [Plaintiff's] employment." Galabya , 202 F.3d at 640.
Plaintiff also argues that Defendants' failure to provide reasonable accommodations constitutes an actionable adverse employment action. (Pl.'s Objs. at 13 ("Because the Defendant's [sic] complained of conduct specifically relates to [Plaintiff's] ability to maintain[ ] her routine and therefore the consequences of her health regimen related to her disabilities, Sosa's claim is viable.").) Again, the Court disagrees. "While courts may consider the underlying conduct of an alleged failure to accommodate, a failure to accommodate, by itself, is not sufficient for purposes of establishing an adverse employment action." Sherman v. Cty. of Suffolk , 71 F.Supp.3d 332, 345 (E.D.N.Y. 2014) (internal quotations and citations omitted).[4]
Accordingly, given that Plaintiff has not alleged sufficient facts to show how Defendants' conduct constituted a "materially adverse change in the terms and conditions of [Plaintiff's] employment," Galabya , 202 F.3d at 640, and there is no error in the R & R regarding this issue, the Court adopts the R & R's recommendation that Plaintiff's § 1981, Title VII, and ADA claim of unlawful discrimination be dismissed.[5]
*497 II. Plaintiff's Objection to the R & R's Severe and Pervasive Hostile Environment Analysis
Plaintiff also objects to the R & R's recommendation that her hostile work environment claims under § 1981, Title VII, and the ADA be dismissed. However, Plaintiff's objection merely restates facts alleging that a hostile work environment existed and notes the standard for deciding hostile work environment claims under § 1981. (See Pl.'s Objs. at 14.) "General or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." O'Diah v. Mawhir , No. 08-CV-322 (TJM) (DRH), 2011 WL 933846, at *1 (N.D.N.Y. March 16, 2011) ; Frankel , 2009 WL 465645, at *2. Furthermore, "objections must be specific and clearly aimed at particular findings in the magistrate judge's proposal." N.Y.C. Dist. Council of Carpenters v. Allied Design and Constr., LLC , 335 F.Supp.3d 349, 350 (E.D.N.Y. 2018). The R & R does not directly address whether the facts Plaintiff alleges constituted a severe and pervasive hostile environment. Instead, the R & R assumes arguendo that such conditions did exist, and concludes that Plaintiff's hostile work environment claim would nonetheless be unsuccessful because of a failure to adequately plead causation. (See R & R at 31.) The Court finds that Judge Bulsara did not clearly err when he chose to assume that the facts alleged constituted a severe and pervasive hostile environment, and rely on another required element of a hostile work environment claim to support his recommendation of dismissal.
III. Plaintiff's Objection to the R & R's Causation Analysis
Plaintiff's third objection argues that she adequately pled causation. Plaintiff argues that she "could prove at trial that, but for Defendant Berger's racial animus towards her, Plaintiff would be treated fairly in the workplace, would not be subject to hostility in the workplace, would receive her preferences and accommodations, *498 would not be made ill, and that her job would not be in jeopardy due [to] an every-burgeoning and distorted disciplinary file." (Pl.'s Objs. at 14.)[6] However, the facts alleged by Plaintiff in her complaint and attached exhibits do not support any inference "that a hostile work environment was created and existed because of [her] protected status, either race, color, or national origin." De La Peña v. Metro. Life Ins. Co. , 953 F.Supp.2d 393, 418 (E.D.NY. 2013). Plaintiff's allegations that she "is the only teacher of West Indian Origin in her unit at P4Q@PS213," that she "is the teacher with the darkest skin color," and that she "is the only African American teacher in her unit at P4Q@PS213 with a disability" (Complaint at ¶¶ 16-18) are not enough to support an inference of causation. See Falcon v. City Univ. of N.Y. , 263 F.Supp.3d 416, 430-31 (E.D.N.Y. 2017) ("The fact that Plaintiff may be a member of a minority group and something happens to [her] that [s]he does not like is not nearly sufficient to constitute an employment discrimination claim.") (internal quotations and citation omitted); see also Buckley v. New York , No. 11-cv-5512 (ADS) (AKT), 2012 WL 13055736, at *14, 2012 U.S. Dist. LEXIS 190837, *36-38 (E.D.N.Y. Sept. 29, 2012) ("That type of reasoning-(1) I am a member of a protected class; (2) something bad happened to me at school; (3) therefore, I was discriminated against based upon my status as a member of a protected class-is more than a legal conclusion which this Court is not required to credit: it is a logically-flawed statement.") (internal quotations and citation omitted). Thus, this objection does not provide a basis for rejecting or modifying the R & R and the Court adopts the R & R's recommendation that Plaintiff's § 1981, Title VII, and ADA claims of hostile work environment be dismissed.[7] *499 IV. Plaintiff's Objection to the R & R's Similarly Situated Analysis
Plaintiff objects to the R & R's conclusion that she has not adequately pled that she is substantially similar to her teacher colleagues to support a claim of disparate treatment. An argument that an employee is treated less well that her substantially similar colleagues is another way to raise the inference of discrimination needed for a successful § 1981 and/or Title VII discrimination claim.[8] See Stinnett v. Delta Air Lines, Inc. , 278 F.Supp.3d 599, 611 (E.D.N.Y. 2017) ("One way of raising an inference of discrimination is through a showing of disparate treatment-that is, a showing that an employer treated plaintiff less favorably than a similarly situated employee outside [her] protected group ....") (internal citations and quotations omitted); see also Bermudez v. City of New York , 783 F.Supp.2d 560, 576 (S.D.N.Y. 2011) ("Claims of employment discrimination under Section 1981 are analyzed under the same framework that applies to Title VII claims and claims under Section 1983."). Plaintiff must do more than make conclusory legal allegations that she is substantially similar to her colleagues in order to adequately plead this claim. See Williams v. N.Y.C. Health & Hosp. Corp. , No. 08-CV-4132, 2010 WL 2836356, at *4 (E.D.N.Y. July 16, 2010) (dismissing Title VII claim where plaintiff merely alleged that "[u]pon information and belief, males got paid when they were out sick but females [did] not," and failed to "specify any facts to support her claim that males were indeed treated differently than females in regard to sick-leave pay"). Here, the fact that Plaintiff and her colleagues are all teachers is not enough. See Butts v. N.Y.C. Dep't of Educ. , No. 16-CV-5504 (NGG) (RML), 2018 WL 4725263, at *10 (E.D.N.Y. Sept. 28, 2018) (rejecting claim where the plaintiff "pleaded only one commonality between [a colleague] and herself: they were both paraprofessionals" and the plaintiff "did not plead that they were subject to the same evaluation and discipline standards or that they engaged in comparable conduct").
Plaintiff alleges that "defendants regularly granted the requests of other Caucasian, non-African American teachers for scheduling changes and classroom transfers." (Complaint at ¶ 49.) However, Plaintiff "fails to describe who these people are, what their responsibilities were, how their workplace conduct compared to [hers], or how they were treated." Henry v. NYC Health & Hosp. Corp. , 18 F.Supp.3d 396, 408 (S.D.N.Y. 2014). "Without factual amplification, the generic allegation of disparate treatment related to an unspecified class of Caucasian persons is simply not sufficient to nudge [ ] [her] claims across the line from conceivable to plausible, and thus is insufficient to support her racial discrimination claim." Id. (internal quotations and citations omitted). Accordingly, based on its de novo review, the Court adopts the R & R's recommendation that the Plaintiff's § 1981 and Title VII disparate treatment claims be dismissed.
CONCLUSION
Plaintiff has failed to raise any objection that warrants rejection or modification of *500 the R & R, which the Court does not find to be erroneous. The Court, therefore, adopts the R & R in its entirety. Plaintiff's federal law claims are dismissed, with leave to amend, solely for the purpose of correcting the deficiencies identified in the R & R and herein. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, unless Plaintiff can sufficiently allege federal law claims in her amended complaint. Plaintiff shall file any amended complaint by April 22, 2019.
SO ORDERED.
REPORT AND RECOMMENDATION
BULSARA, United States Magistrate Judge:
On January 21, 2018, Plaintiff Alice Sosa ("Sosa") filed this action against the New York City Department of Education ("NYCDOE") and Marcy Berger ("Berger"), alleging violations of various civil rights statutes, including 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 2000e et seq. (Title VII of the Civil Rights Act of 1964 ("Title VII") ), 42 U.S.C. § 12101 et seq. (Americans with Disabilities Act ("ADA") ), New York State Executive Law § 296 et seq. (New York State Human Rights Law ("NYSHRL") ), and the New York City Administrative Code § 8-101 et seq. and § 8-107(15) (New York City Human Rights Law ("NYCHRL") ). Sosa alleges that Berger and the NYCDOE subjected her to discrimination, harassment, and a hostile work environment based on her race, skin color, national origin, and disability while she worked as a special education teacher. This is the second lawsuit that Sosa has brought against the NYCDOE and Berger. The other lawsuit-pending before Judge DeArcy Hall, No. 14-CV-7094-contains allegations that are intertwined with and similar to those made in this case. In the present case, Sosa alleges that the NYCDOE and Berger retaliated against her for filing the earlier case, No. 14-CV-7094.
On June 8, 2018, Berger and the NYCDOE filed a motion to dismiss. On June 12, 2018, the Honorable Pamela K. Chen referred the motion to the undersigned for a report and recommendation. The Court directed the submission of additional briefing on the issue of exhaustion as a defense. (Order dated Nov. 13, 2018). To date, Sosa's other lawsuit, No. 14-CV-7094, has not reached final judgment.
For the reasons stated below, it is respectfully recommended that the motion to dismiss with respect to the federal claims be granted, and the Court decline to exercise supplemental jurisdiction over the remaining state and city claims. Because this is Sosa's first Complaint, the Court recommends that the dismissal be without prejudice and Sosa be granted leave to file an amended complaint.
Factual Background and Procedural History
The facts, which the Court accepts as true for the purposes of considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, see Gregory v. Daly , 243 F.3d 687, 691 (2d Cir. 2001), are drawn from the Complaint and its attached exhibits as follows.[1]
*501 I. The Parties
Sosa has been employed with the NYCDOE since 1996 and has been a special education teacher since 2004 at P4Q@213, which is located at 67th Avenue in Queens, New York. (Complaint, Dkt. No. 1 ("Sosa II Compl.") ¶¶ 7, 11-12). P4Q is a program that provides educational, vocational, and behavioral support for special needs students.[2] (Id. ¶ 7). During her employment at the NYCDOE, Sosa has been rated as "highly effective" and is known by her peers for innovative classroom practices. (Id. ¶¶ 13, 15).
Sosa identifies as an African American woman of West Indian origin, with darker-hued skin color. (Id. ¶ 6.) According to Sosa, she is a qualified individual with a disability under the ADA, NYSHRL, and NYCHRL. (Id. ¶ 29). She alleges that she has several disabilities, including breast cancer, carpal tunnel syndrome, spinal injuries, hernia, and anxiety and depression caused largely by discrimination she experienced in her workplace. (Sosa II Compl. ¶¶ 30, 33-34). According to Sosa, Defendants concede that her requests for accommodations due to her disability were medically warranted and her disability is not in question. (Id. ¶¶ 65-66).
Sosa is the only African American teacher with a disability in her unit at P.S. 213. (Id. ¶ 18). There are no other teachers of West Indian origin and only one other teacher with darker-hued skin. (Id. ¶¶ 16-17).
Berger is the Principal and Head Administrator for P4Q, the program that provides support for special needs students at P.S. 213. (Sosa II Compl. ¶¶ 7, 9). Berger has supervisory power over Sosa and the authority to influence Sosa's working conditions and the manner in which other employees interact with her. (Id. ¶¶ 22-23). Berger also has control over teacher scheduling matters for P4Q and P.S. 213. (Id. ¶¶ 20-21).
II. The Current Complaint
The Complaint alleges that since 2006, Sosa has experienced discrimination, harassment, and a hostile work environment based on her race, skin color, national origin, and disability. (Id. ¶ 28). Much of the conduct is identical to the allegations made in her 2014 civil action against Berger and the NYCDOE, which is discussed further below. (See Sosa v. N.Y.C. Dep't of Educ. , No. 14-CV-7094 ("Sosa I "), Complaint, Dkt. No. 1 ("Sosa I Compl.") ¶¶ 20, 38). Her allegations in this case focus on her treatment following her return to work in 2016 and fall into three general categories: (1) Sosa's placement and schedule upon her return to work; (2) the inconsistent application of workplace rules following her return to work; and (3) allegations of professional misconduct following her return to work.
1. From around 2013 to 2015, Sosa went on approved medical leave to obtain treatment for her disabilities. (Sosa II Compl. ¶ 36). In April 2016, Sosa notified the NYCDOE that she wanted to return to work for the upcoming year and requested that she be placed in her previous position as a homeroom teacher at P.S. 213. (Id. ¶ 37). She also submitted an accommodation request with doctors' notes that explained *502 her medical need for a "consistent schedule" and a "structured classroom environment." (Id. ¶¶ 37-38; NYCDOE Verified Answer to New York City Commission on Human Rights dated June 27, 2017, attached as Ex. 4 to Sosa II Compl., Dkt. No. 1 ("NYCDOE Verified Answer"), Ex. A).[3] Specifically, Sosa requested to have a prep during third and eighth period and to have lunch during fifth period.[4] (NYCDOE Verified Answer, Ex. F). However, Defendants initially placed Sosa as a cluster teacher at P4Q@179, another P4Q school, and denied her other requests without explanation.[5] (Sosa II Compl. ¶ 39).
On June 6, 2016, Sosa filed a grievance with Berger as a result of this assignment. Berger then failed to schedule a grievance conference as required by the United Federation of Teachers (UFT) contract, (id. ¶ 40), and otherwise "refused to meaningfully interact" with Sosa, (id. ¶ 43). The grievance moved forward without Berger's involvement, (id. ¶ 40), and on July 7, 2016, a month after she made the request, the NYCDOE returned Sosa to P.S. 213. (NYCDOE Verified Answer, Ex. J).
In late June 2016, Sosa emailed Berger asking to be assigned to her former classroom at P.S. 213, to be given the requested schedule, and to be assigned as a homeroom teacher instead of cluster teacher.[6] (Sosa II Compl. ¶ 41). Berger referred the request to the NYCDOE Medical Administration ("HR Connect"), and Sosa submitted another doctor's note supporting her requests.[7] (Id. ¶¶ 42, 47). On August 10, 2016, HR Connect issued a letter partially approving Sosa's requests, giving her a third period prep on every day except Thursday, an eighth period prep every day, and lunch during fifth period every day. (NYCDOE Verified Answer, Ex. D at 1). The August 10 letter denied Sosa's request for use of her usual classroom as not reasonable. (Id. ). However, Berger had already transferred Sosa to her old classroom at P.S. 213 and HR Connect issued a second letter on August 19, 2016 confirming that Sosa would be able to use that classroom. (Id. , Ex. K). Thus, Defendants ultimately granted Sosa's accommodations for everything except her Thursday schedule, that is, everything except an additional prep period on Thursdays. Sosa asserts that Berger and the NYCDOE regularly granted similar requests by Caucasian, non-African American, non-disabled teachers and could easily have granted her this additional accommodation without undue hardship. (Sosa II Compl. ¶¶ 49-51).
2. Sosa also alleges Defendants inconsistently and discriminatorily applied workplace rules. (Id. ¶ 60). Sosa alleges Defendants instituted new rules solely for the purpose of harassing and abusing her. (Complainant's EEOC Rebuttal to NYCDOE Verified Answer dated Aug. 22, 2017, attached as Ex. 5 to Sosa II Compl. ("Rebuttal to Verified Answer") ¶¶ 25, 27). For example, in February 2017, Defendants began prohibiting teachers from using the *503 restroom during breakfast and lunch, soon after Sosa had spoken to her supervisors about needing to use the restroom more frequently during those times. (Id. ¶¶ 22-25). Similarly, Defendants required teachers to lock their classroom doors in order to prevent theft; this affected Sosa's ability to perform her job because she was one of the only teachers without a printer in her room and she needed to enter other teachers' rooms to use their printers. (Id. ¶¶ 26-28, 30). When Sosa attempted to address this issue at a staff meeting on February 13, 2017, she was reprimanded by her supervisors. (Id. ¶ 29). Sosa also alleges that other teachers were not reprimanded for breaking rules by doing things like leaving their classroom unattended while going to the restroom, using their phones during breakfast or lunch, leaving students unattended, and having hot coffee near students. (Id. ¶ 15).
3. Sosa alleges Defendants falsely accused her of professional misconduct, without cause, in a manner that deprived her of "dignity, health, livelihood, professional reputation, and ... employment." (Sosa II Compl. ¶¶ 61-63). Sosa alleges that Berger accused her "of being AWOL" from her job on April 6, 2017 after she became ill at school and left, even though she received the necessary approval to leave early. (Rebuttal to Verified Answer ¶ 56). Sosa points to several other similar instances involving her work absences and Defendants' improper responses, which she believes to be retaliation for the filing of her EEOC Complaint on January 12, 2017. (E.g. , id. ¶¶ 35, 41, 46). These resulted in two disciplinary letters in Sosa's file, one made by Defendant Berger dated February 28, 2017 and one made by another supervisor dated March 15, 2017. (Id. ¶¶ 46-47).
Sosa makes other miscellaneous allegations that do not fit neatly in these categories but are made in connection with her hostile work environment claim. For example, Sosa alleges that one of her supervisors, Ms. Berman, or her union representative, Ms. Thomas, leaked the details of Sosa's March 28, 2017 grievance meeting, during which Sosa disclosed that she had photographs documenting the inconsistent application of workplace rules. (Id. ¶¶ 49, 52). Sosa alleges either Ms. Berman or Ms. Thomas leaked the details of the meeting "in order to foment staff opposition" towards her, (id. ¶ 52), which caused other teachers to do things like allege Sosa was causing a hostile work environment for them, (Rebuttal to Verified Answer ¶ 51). In addition, Defendants excluded Sosa from workplace social events, such as a surprise birthday party for another teacher on March 27, 2017, causing Sosa humiliation and sadness. (Id. ¶ 55).
Sosa describes all these actions as a pattern of willful conduct by Berger and the NYCDOE amounting to a materially adverse and hostile work environment in an attempt to induce her to quit. (Sosa II Compl. ¶¶ 69-70). Sosa alleges Berger's actions were motivated by "racial animus against African American persons with dark skin and ... personal disgust for Ms. Sosa's disabilities," (id. ¶ 53), and that Berger both engaged in discrimination herself as well as directed others under her supervision to do so, (id. ¶¶ 22-25). Sosa further alleges Defendants' conduct was in retaliation for the filing of her complaint in Sosa I . (E.g., id. ¶¶ 80, 93). Such conduct has impacted Sosa's "health, livelihood, and working conditions, causing the plaintiff fear, shame, anxiety, hair loss, nausea and insomnia." (Id. ¶ 68; see also id. ¶¶ 35, 64).
Sosa filed a Verified Complaint with the New York City Commission of Human Rights ("NYCCHR"), on behalf of the Equal Employment Opportunity Commission ("EEOC"), against Defendants under *504 the ADA and the Administrative Code of the City of New York § 8-107(15) on January 12, 2017. (EEOC/NYSHRC Verified Complaint, attached as Ex. 1 to Sosa II Compl., Dkt. No. 1 ("EEOC Verified Compl.") ). Both the NYCCHR and the EEOC dismissed Sosa's Verified Complaint for administrative convenience; the NYCCHR notified Sosa of her right to sue by letter dated September 5, 2017, and the EEOC notified her by letter dated October 23, 2017. (NYCCHR Right to Sue Letter, attached as Ex. 3 to Sosa II Compl., Dkt. No. 1 ("NYCCHR Letter"); EEOC Right to Sue Letter, attached as Ex. 4 to Sosa II Compl., Dkt. No. 1 ("EEOC Letter") ).
The Complaint asserts 18 causes of action.[8] Unless otherwise noted, they are brought against both defendants. They are as follows:
1) Race discrimination and hostile work environment in violation of 42 U.S.C. § 1981 and § 1983 (Count 1);
2) Skin color discrimination and hostile work environment in violation of 42 U.S.C. § 1981 and § 1983 (Count 2);
3) Retaliation for Sosa's opposition to race and skin color discrimination in violation of 42 U.S.C. § 1981 and § 1983 (Count 3);
4) Race discrimination and hostile work environment in violation of Title VII (against NYCDOE only) (Count 4);
5) National origin discrimination and hostile work environment in violation of Title VII (Count 5);
6) Skin color discrimination and hostile work environment in violation of Title VII (Count 6);
7) Retaliation for Sosa's opposition to race and skin color discrimination in violation of Title VII (Count 7);
8) Race discrimination and hostile work environment in violation of the NYSHRL (Count 8);
9) Skin color discrimination and hostile work environment in violation of the NYSHRL (Count 9);
10) Retaliation for Sosa's opposition to race and skin color discrimination in violation of the NYSHRL (Count 10);
11) Race discrimination and hostile work environment in violation of the NYCHRL (Count 11);
12) National origin discrimination and hostile work environment in violation of the NYCHRL (Count 12);
13) Skin color discrimination and hostile work environment in violation of the NYCHRL (Count 13);
14) Disability discrimination and hostile work environment in violation of the NYCHRL (Count 14);
15) Retaliation for Sosa's opposition to race and skin color discrimination in violation of the NYCHRL (Count 15);
*505 16) Same as Count 15;[9]
17) No Count 17 has been pled;
18) Disability discrimination and hostile work environment in violation of the ADA and the NYSHRL (Count 18);
19) Retaliation for Sosa's opposition to disability discrimination in violation of the ADA (Count 19).[10]
III. The 2014 Lawsuit
On December 4, 2014, Sosa filed a Complaint against Berger and the NYCDOE, as well as other individuals (the "Sosa I Defendants"), alleging discrimination based on race, national origin, skin color, and disability, as well as retaliation for opposition to such discrimination. (Sosa I Compl. ¶¶ 20, 33). That Complaint alleges 23 causes of action, (id. at 31), under the ADA, Title VII, 42 U.S.C. §§ 1981 and 1983, 29 U.S.C. § 2601 et seq. ("FMLA"), 29 U.S.C. § 791 et seq. ("Rehabilitation Act"), the NYSHRL, and the NYCHRL. (Id. ¶ 1). These causes of action are largely the same as those asserted in her 2018 Complaint, except that the 2014 Complaint did not allege disability discrimination in violation of the ADA against Berger or retaliation in violation of the ADA against the NYCDOE. (Compare Sosa I Compl., with Sosa II Compl. ¶¶ 122-127).
In her 2014 Complaint, Sosa alleged she qualified as an individual with a disability under the ADA, NYCHRL, NYSHRL, and Rehabilitation Act, as well as an individual with a serious health condition under the FMLA, due to her diagnosis and treatment for breast cancer, carpal tunnel syndrome, and a hernia. (Sosa I Compl. ¶¶ 20, 24-25, 29). Her conditions "substantially limited" her "ability to perform certain major life functions," and she struggled to eat and walk up the stairs. (Id. ¶ 25). In 2008 and 2009, Sosa made multiple requests to leave early for chemotherapy and radiation treatment, which would not have interfered with her class time, but her requests were denied. (Id. ¶¶ 26-27). Sosa's other accommodation requests, including a request for the elevator key because she struggled to walk up the stairs and a request to work with less aggressive students, were denied. (Id. ¶ 28).
According to Sosa, these denials were part of an ongoing pattern of discrimination against her beginning in 2006 based on race, national origin, skin color, disability, and in retaliation for exercising her rights. (Id. ¶¶ 20, 29). For example, in 2006, Defendants denied her a promotion and special job training in favor of similarly or less qualified Caucasian employees. (Sosa I Compl. ¶¶ 22-23). In 2012, after Sosa returned from medical leave due to a resurgence of breast cancer and a hernia, the Defendants subjected her to other instances of discrimination, including denying her the opportunity to be a member of the school's curriculum team and to present at the school's curriculum workshop in favor of other similarly qualified Caucasian employees, conveying numerous disparaging comments to her, and falsely accusing her of criminal assault. (Id. ¶ 29).
After Sosa complained several times to the NYCDOE's Office of Equal Opportunity, *506 Defendants wrote her up at least two times, threatened to fire her or transfer her to another school, and interfered with her application for benefits related to a work injury. (Id. ¶¶ 30, 32, 35). Defendants' conduct damaged Sosa's reputation and caused her "severe and lasting embarrassment, humiliation and anguish, and severe emotional and/or physical distress." (Id. ¶¶ 39-40). On September 20, 2018, the District Court issued a Memorandum and Order dismissing several of Sosa's claims. (Sosa I Memorandum and Order dated Sept. 20, 2018, Dkt. No. 45 ("Sosa I Sept. Order") ). Trial is currently scheduled for February 25, 2019. (Minute Entry dated Oct. 9, 2018).
Judge DeArcy Hall concluded that with respect to Sosa's discrimination claims under § 1983 and § 1981, Title VII, the Rehabilitation Act, and the ADA, Sosa had failed to make out a prima facie case. Specifically, Sosa had failed to demonstrate that she suffered an adverse employment action. (Sosa I Sept. Order at 11). With respect to Sosa's failure to accommodate claims, Judge DeArcy Hall concluded that one allegation-Sosa's request that a dangerous student be removed from her classroom-was a speculative, non-actionable event. (Id. at 15). However, with respect to Sosa's request that her lunch period be shifted to a later time, summary judgment for Defendants on this ADA claim was inappropriate. (Id. at 15-16). As to Sosa's hostile work environment claims-based on discriminatory harassment because of Sosa's race, ethnicity, skin color, and national origin-the alleged statements that were the basis of her claims were too sporadic and trivial to be actionable. (Id. at 17). Finally, with respect to her federal retaliation claims under the ADA, FMLA, Title VII, the Rehabilitation Act, and § 1981 and § 1983, Sosa failed to make out a prima facie case of retaliation. (Id. at 22). The Court declined to exercise supplemental jurisdiction over Sosa's state law claims except to the extent they overlapped with her ADA claim based on a failure to be given a lunch accommodation. (Sosa I Sept. Order at 22-23).
Discussion
I. Legal Standards for Motion to Dismiss
For a 12(b)(6) motion, the Court must "accept as true all of the factual allegations set out in plaintiff's complaint." Gregory , 243 F.3d at 691. The Court then draws "inferences from those allegations in the light most favorable to plaintiff, and construe[s] the complaint liberally." Id. Once the facts are construed in the light most favorable to the plaintiff, to avoid dismissal, there must be sufficient facts that allege a plausible claim. Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("To survive a motion to dismiss [pursuant to Rule 12(b)(6) ], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (quotations omitted). "[A] district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference. Of course, it may also consider matters of which judicial notice may be taken under Fed. R. Evid. 201." Kramer v. Time Warner Inc. , 937 F.2d 767, 773 (2d Cir. 1991).
"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal , 556 U.S. at 678, 129 S.Ct. 1937. A complaint must contain more than "naked assertion[s] devoid of further factual enhancement." Id. (quotations omitted). In other words, a plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
*507 Id. ; Fed. R. Civ. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly , 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The determination whether a plaintiff has alleged a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal , 556 U.S. at 679, 129 S.Ct. 1937 ; see also Escamilla v. Young Shing Trading Co. , No. 17-CV-652, 2018 WL 1521858, at *2 (E.D.N.Y. Jan. 8, 2018), report and recommendation adopted , 2018 WL 1033249 (Feb. 23, 2018).
The Court's analysis proceeds as follows: First , the Court addresses whether the Sosa II claims are barred by res judicata or another similar doctrine, as argued by Defendants in their motion papers. (See Sosa II Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint, attached as Ex. 3 to Notice of Motion to Dismiss for Failure to State a Claim, Dkt. No. 18 ("Mot. to Dismiss Mem.") at 6-8). Second , the Court examines Sosa's § 1981 and § 1983 claims of unlawful discrimination, disparate treatment, hostile work environment, and retaliation based on Sosa's race and skin color, which Defendants argue should be dismissed for various reasons, including lack of adverse employment action, the conclusory nature of the allegations, and failure to plead causation. (See id. at 8, 10, 25). Third , the Court examines the same claims brought under Title VII based on Sosa's race, skin color, and national origin. Fourth , the Court examines Sosa's ADA claims, namely her claims of unlawful discrimination, failure to accommodate, hostile work environment, and retaliation based on her disability, which Defendants argue should be dismissed for same reasons as the other federal claims-i.e. lack of adverse employment action, the conclusory nature of the allegations, and failure to plead causation. (See id. at 10-18, 24-25). Finally , the Court addresses whether supplemental jurisdiction over Sosa's state and city claims should be exercised and whether Sosa should be given leave to amend her Complaint.
II. Res Judicata
On April 11, 2018, this Court ordered Sosa to show cause as to why her Sosa II claims should not be barred by res judicata based on the Sosa I litigation. (Sosa II Order to Show Cause dated April 11, 2018, Dkt. No. 12 ("Order to Show Cause") ). Sosa responded to the Order to Show Cause on April 25, 2018, arguing the claims in Sosa II were legally significant independent of Sosa I and were not yet ripe at the time discovery was completed in Sosa I . (Sosa II Resp. to Order to Show Cause, Dkt. No. 14 at 1-2). After Defendants filed a motion for pre-motion conference, (Sosa II Letter Motion for Pre-Motion Conference, Dkt. No. 16), the Court ordered a briefing schedule for the current motion to dismiss, (Sosa II Order dated May 9, 2018). There is currently no basis to dismiss Sosa's claims in this case in light of her earlier litigation because a final judgment has not been entered in Sosa I .
Res judicata, or claim preclusion, "forecloses litigation of a claim that has been adjudicated in an earlier suit." Staten v. City of New York , No. 16-CV-5317, 2017 WL 2937698, at *5 (S.D.N.Y. July 10, 2017) (citing Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc. , 779 F.3d 102, 107-08 (2d Cir. 2015) ). "To prove the affirmative defense [of res judicata] a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs *508 or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Monahan v. N.Y.C. Dep't of Corr. , 214 F.3d 275, 285 (2d Cir. 2000).
Summary judgment is an adjudication on the merits, and can have res judicata effect provided that judgment has been entered. See Kremer v. N.Y. State Ins. Dep't , No. 06-CV-9949, 2009 WL 777721, at *4 (S.D.N.Y. Mar. 25, 2009) ("Summary judgment constitutes a final judgment on the merits for purposes of applying res judicata.") (quotations omitted); Rodriguez ex rel. Rodriguez v. Abbott Labs. , 151 F.R.D. 529, 532 (S.D.N.Y. 1993) ("[S]ummary judgment is a final judgment on the merits sufficient to raise the defense of res judicata in a subsequent action between the parties.") (citing 1B James Wm. Moore et al., Moore's Federal Practice ¶ 0.409[1] (2d ed. 1984) ); In re Residential Capital, LLC , 531 B.R. 1, 13 (Bankr. S.D.N.Y. 2015) ("[T]he Summary Judgment Order does not constitute a final judgment on the merits because no judgment was entered by the District Court after entry of the Summary Judgment Order with respect to the Debtor Defendants.").
A partial summary judgment grant operates similarly-there must be final judgment entered as to the dismissed claims. A district court is empowered to enter final judgment pursuant to Rule 54(b) as to those claims dismissed in a partial summary judgment decision. Fed. R. Civ. P. 54(b) ("When an action presents more than one claim for relief[,] ... the court may direct entry of a final judgment as to one or more, but fewer than all, claims ... only if the court expressly determines that there is no just reason for delay."). Otherwise, the partial summary judgment decision acts only as an order that is subject to revision. Id. ("Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims ... does not end the action as to any of the claims ... and may be revised[.]"). And that possibility deprives the partial summary judgment decision of res judicata effect. Nieto v. Vill. Red Rest. Corp. , No. 17-CV-2037, 2017 WL 4539327, at *1 (S.D.N.Y. Oct. 10, 2017) ("[I]f final judgment has not been entered, then a partial summary judgment generally does not have preclusive effects. Because [the Court's] decision only partially resolved the claims in [the first case] and was not entered as a final judgment, res judicata does not apply.") (citations omitted) ); Warner Bros. Inc. v. Am. Broad. Cos. , 720 F.2d 231, 245 n.11 (2d Cir. 1983) ; see also Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2661 (3d ed.) ("[P]reclusion principles are based on a final judgment so that since a Rule 54(b) judgment is viewed as final, it has binding effect. On the other hand, if no certificate [of judgment] issues, the court's decision or order remains interlocutory and the above effects will not take place.").
Defendants argue that the claims in Sosa's 2018 Complaint are barred by res judicata because they were either decided in the 2014 suit or "do not amount to a new claim ... [because] they are nothing more than additional instances of what was preciously asserted[.]" (Mot. to Dismiss Mem. at 7).
As of the date of this Report and Recommendation, there is no final judgment entered with respect to the § 1981 and § 1983, Title VII, FMLA, ADA, and Rehabilitation Act claims that were dismissed pursuant to the September Sosa I order. As a result, res judicata cannot be applied to bar those claims in this lawsuit.[11]
*509 III. Section 1981 and Section 1983 Claims
Sosa's first three claims allege a combination of race and skin color discrimination, hostile work environment, and retaliation, pursuant to 42 U.S.C. § 1981 and § 1983. (See Sosa II Compl. ¶¶ 71-82).
Section 1981 provides "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts[.]" 42 U.S.C. § 1981(a). The Civil Rights Act of 1991 expanded § 1981 to outlaw discrimination occurring after contract formation "with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship[.]" Patterson v. County of Oneida , 375 F.3d 206, 224 (2d Cir. 2004). Section 1981, however, does not contain a cause of action against state actors; these claims must be brought through § 1983. Duplan v. City of New York , 888 F.3d 612, 619-21 (2d Cir. 2018) (joining nine other circuits to reaffirm the applicability of Jett v. Dallas Indep. Sch. Dist. , 491 U.S. 701, 733, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) ) ("[T]he express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units."); see, e.g. , Gladwin v. Pozzi , 403 F. App'x 603, 605 (2d Cir. 2010) ("[Plaintiff's] § 1981 claims are encompassed by her § 1983 claims, and both are therefore analyzed under § 1983."); Chioke v. Dep't of Educ. of City of N.Y. , No. 15-CV-1845, 2018 WL 3118268, at *15 (E.D.N.Y. June 25, 2018) (analyzing plaintiff's § 1981 claims against the NYCDOE under § 1983 because " § 1981 cannot provide [plaintiff] any relief" against state actors). Section 1983"is not itself a source of substantive rights; instead, it merely provides a method for vindicating federal rights elsewhere conferred, such as those conferred by § 1981." Garrido v. N.Y.C. Dep't of Educ. , No. 16-CV-9464, 2018 WL 1664793, at *5 (S.D.N.Y. Mar. 15, 2018) (quotations omitted).
Here, Sosa identifies both § 1981 and § 1983 in each of her claims of racial discrimination, skin color discrimination, hostile work environment, and retaliation. (Sosa II Compl. ¶¶ 71-82). She alleges "Defendants willfully subject[ed her] to discrimination and harassment in the workplace" and "to unlawful retaliation for her opposition to, her reporting of, and complaints about race and color discrimination" in violation of § 1981. (Id. ¶¶ 72, 76, 80). She asserts that her right to be free from such conduct is secured under § 1983 and that Defendants acted "under color of state law" when engaging in discrimination and retaliation. (Id. ¶¶ 73, 77, 81). Thus the Court interprets Sosa's Complaint to allege substantive violations of § 1981, brought pursuant to § 1983.[12]
*510 "In analyzing whether a plaintiff has sufficiently alleged an employment discrimination claim, the Court must consider ... the three-stage, burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green , 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." Richard v. N.Y.C. Dep't of Educ. , No. 16-CV-957, 2017 WL 1232498, at *5 (E.D.N.Y. Mar. 31, 2017).[13]
At the pleading stage, a plaintiff does not need to prove discrimination or even allege facts establishing every element of the McDonnell Douglas prima facie case, but the facts alleged must give plausible support to the reduced requirements of the prima facie case. Thus, a plaintiff need only plead facts sufficient to give plausible support to the plaintiff's minimal initial burden, which is governed by the statute under which she brings her claims.
Id. at *6 (quotations and citations omitted); see Littlejohn v. City of New York , 795 F.3d 297, 312 (2d Cir. 2015) ("[Plaintiff's] disparate treatment claim under ... § 1981 [ ] and § 1983 is subject to the burden shifting evidentiary framework set forth in McDonnell Douglas .... [B]ecause this appeal involves a review of a motion to dismiss, we focus only on whether the allegations in the complaint give plausible support to the reduced prima facie requirements that arise under McDonnell Douglas in the initial phase of a litigation.").
On a motion to dismiss, courts generally treat the elements of a prima facie case as an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible to survive a motion to dismiss. Thus, for the Court to deem a set of factual allegations plausible, Plaintiffs must allege facts that allow the Court, in substance, to infer the essential elements of a prima facie case.
Hill v. City of New York , 136 F. Supp. 3d 304, 332-33 (E.D.N.Y. 2015) (quotations and citations omitted).
*511 A. Unlawful Discrimination (Counts 1 and 2)
Counts 1 and 2 allege race and skin color discrimination under § 1981 and § 1983. (See, e.g. , Sosa II Compl. ¶¶ 72-78). To state such a claim, a plaintiff must allege first that an employer discriminated against her and second that it did so because of her race or color. Vega v. Hempstead Union Free Sch. Dist. , 801 F.3d 72, 85 (2d Cir. 2015) ; Isbell v. City of New York , 316 F. Supp. 3d 571, 590 (S.D.N.Y. 2018).[14]
As to the first element, "[a]n employer discriminates against an employee by taking an adverse employment action, such as termination of employment." Isbell , 316 F. Supp. 3d at 590 (quotations and citations omitted) (applying the framework of a Title VII motion to dismiss to a § 1981 and § 1983 motion to dismiss). "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." Vega , 801 F.3d at 85 (quotations omitted).
An adverse employment action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." Galabya v. N.Y.C. Bd. of Educ. , 202 F.3d 636, 640 (2d Cir. 2000) (quotations omitted). Such actions could include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." Id. (quotations omitted).
As noted above, Judge DeArcy Hall granted summary judgment to Defendants on Sosa's § 1981 and § 1983 claims. Specifically, Judge DeArcy Hall found that Sosa "has not made a prima facie showing that she suffered an adverse employment action" since "none of the alleged conduct constitutes an adverse employment action actionable under law." (Sosa I Sept. Order at 11). Judge DeArcy Hall determined that, even if true, Defendants' offensive racial remarks towards Sosa, the disciplinary letters issued in Sosa's file, Sosa's transfer from P.S. 213 to P.S. 179, and the failure to assign Sosa as a unit coordinator or select her for a particular professional development opportunity could not constitute adverse employment actions because they did not change the terms and conditions of employment. (Id. at 11-13). Sosa I was decided on summary judgment; the present motion is to dismiss. Both, however, require analysis of a prima facie case of discrimination. See Littlejohn , 795 F.3d at 310-11. And the issues that plague Sosa's complaint in her other case are present with this Complaint: a failure to identify and plausibly allege an adverse employment action.
Sosa alleges the following adverse employment actions: the failure to accommodate her medically requested preferences and the delay in receiving the accommodations she was provided, (see Sosa II Compl. ¶¶ 37-39, 47-55), the failure of Defendant Berger to interact with her during the accommodations process, (see id. ¶¶ 40-46), the allegations against Sosa of professional misconduct, (see id. ¶¶ 61-63), and the inconsistent application of workplace rules between Sosa and her colleagues, *512 (see id. ¶ 60). Defendants contend that these do not amount to adverse employment actions. (Mot. to Dismiss Mem. at 20-22). They are correct.
As to the failure to accommodate and the related delay, Sosa alleges Defendants failed to provide her with a single prep period on one day of the work week, as she had originally requested. Other than that, the only other harm is the delay occasioned from having to wait to be returned to her original classroom and receive the schedule she requested. Sosa does not explain what about a denial of a single accommodation request or delay in receiving other accommodations amounts to a material change in the terms of her employment. For one thing, because she received almost everything she asked for, there was no negative change in her employment conditions; and one prep period cannot be seen as anything but a de minimis change. Batyreva v. N.Y.C. Dep't of Educ. , No. 07-CV-4544, 2010 WL 3860401, at *12 (S.D.N.Y. Oct. 1, 2010) ("Batyreva's purportedly unfavorable teaching schedule for the Fall 2006 semester is not an 'adverse employment action,' ... [T]his new schedule did not significantly diminish [her] material responsibilities, ... or otherwise ha[ve] such a substantial impact on her job as to be considered tantamount to a demotion.") (quotations and citations omitted), aff'd , 464 F. App'x 31 (2d Cir. 2012) ; e.g. , Robinson v. Macy's Retail Holding, Inc. , No. 14-CV-4937, 2015 WL 10793114, at *12 (S.D.N.Y. Aug. 19, 2015) (finding plaintiff's complaint about scheduling-"she says that she was not given full weekends off, or allowed to work on Saturday rather than Sunday"-did not amount to adverse employment action).
And the short delay in receiving her other requests is not enough to constitute adverse employment action, particularly since the accommodations were granted before the school year began and before she returned to work. (See NYCDOE Verified Answer, Ex. K (granting Sosa use of her usual classroom and her requested schedule on all but one day of the week in a letter dated August 19, 2016) ); Williams v. N.Y.C. Hous. Auth. , No. 03-CV-7764, 2008 WL 2695139, at *3 (S.D.N.Y. June 29, 2008) ("A delay in processing paperwork that does not materially change the terms and conditions of a plaintiff's employment is not an adverse employment action[.]"), aff'd , 361 F. App'x 220 (2d Cir. 2010) ; Dechberry v. N.Y.C. Fire Dep't , 124 F. Supp. 3d 131, 147 (E.D.N.Y. 2015) ("[A] delay in the administrative processing of benefits does not generally constitute an adverse employment action."); e.g. , Galabya , 202 F.3d at 640 ("[T]here is no evidence that shows that the delay in reassignment, followed by the mis-assignment to Sara Hale, was an adverse employment action. Appellant does not allege that appellee denied him an available transfer, that appellee failed to pay his salary during the interim period, or that the delay in any way harmed his career.").
As to the allegations of professional misconduct, Sosa alleges Defendants improperly accused her of missing work, which resulted in at least two disciplinary letters in her file. No other impact is alleged. "Like other negative performance evaluations, letters to file do not rise to the level of an adverse employment action where, as here, they do not trigger other adverse consequences, such as loss of pay." Sotomayor v. City of New York , 862 F. Supp. 2d 226, 255 (E.D.N.Y. 2012), aff'd , 713 F.3d 163 (2d Cir. 2013) ; see also Lyman v. NYS OASAS , 928 F. Supp. 2d 509, 520 (N.D.N.Y. 2013) ("District courts within the Second Circuit have often found that reprimands, threats of disciplinary action, and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease *513 in pay or being placed on probation.") (quotations and alterations omitted) (collecting cases); see, e.g. , Vale v. Great Neck Water Pollution Control Dist. , 80 F. Supp. 3d 426, 435 (E.D.N.Y. 2015) (holding "disciplinary charges and written reprimands issued against the Plaintiff do not, even if true, constitute an 'adverse employment action' because none resulted in a loss of pay, suspension, or material change in the terms of the Plaintiff's employment").[15]
Sosa also alleges Defendants reprimanded her when they did not chastise other teachers and created new rules related to bathroom use and locking classrooms solely for the purpose of harassing her. While inconsistent application of certain workplace rules could be considered an adverse employment action in the context of retaliation,[16] see e.g. , Deshpande v. Medisys Health Network, Inc. , No. 07-CV-375, 2008 WL 2004160, at *5 (E.D.N.Y. May 7, 2008), here the rules alleged to be applied inconsistently relate to bathroom breaks and classroom access. Accepting that Sosa was treated differently with respect to these items, there is no allegation they affected her pay, are related to benefits or privileges of employment, or evidenced a demotion. In this context, they again are too ministerial to be the basis of a viable claim. E.g. , Galabya , 202 F.3d at 640 ("As a matter of law, the disparity in working conditions-which reduces to the fact that teachers at Van Arsdale rotate through classrooms whereas teachers at P.S. 4 have their own classrooms-may be characterized as minor."); Gordon v. N.Y.C. Bd. of Educ. , No. 01-CV-9265, 2003 WL 169800, at *7 (S.D.N.Y. Jan. 23, 2003) ("While Gordon has demonstrated that the lack of a permanent classroom was a great inconvenience to her, she has not offered any evidence to show that such undesirable working conditions prevented her from doing her job.").
Without an identifiable adverse employment action, Sosa's claims for race and skin color discrimination under § 1981 and § 1983 must be dismissed. See, e.g. , Hernandez v. City of New York , No. 11-CV-3521, 2013 WL 593450, at *3-4 (E.D.N.Y. Feb. 13, 2013) (dismissing plaintiff's § 1981 claims based on failure to allege adverse employment action); Henry v. N.Y.C. Health & Hosp. Corp. , 18 F. Supp. 3d 396, 405-06, 409 (S.D.N.Y. 2014) (dismissing Title VII and NYSHRL claims, in part, for failure to allege adverse employment action).
B. Disparate Treatment (Counts 1 and 2)
Counts 1 and 2 in Sosa's Complaint can be read to allege disparate treatment under § 1981. (See, e.g., Sosa II Compl. ¶ 49 ("[D]efendants regularly granted the requests of other Caucasian, non-African American teachers[.]"), ¶ 60 ("Defendants have continuously treated Ms. Sosa differently *514 than Caucasian teachers by inconsistently and discriminatorily applying workplace rules.") ). To the extent that disparate treatment is Sosa's means of alleging unlawful discrimination, the claims fail for an independent reason: she has failed to allege that she was similarly situated to those employees she alleges received more favorable treatment.
"A plaintiff may demonstrate circumstances giving rise to an inference of discrimination by alleging that [s]he was treated less favorably than similarly situated employees of other races[.]" Brown v. Daikin Am. Inc. , 756 F.3d 219, 229 (2d Cir. 2014) ; see McGuinness v. Lincoln Hall , 263 F.3d 49, 53 (2d Cir. 2001) ("A showing that the employer treated a similarly situated employee differently is a common and especially effective method of establishing a prima facie case of discrimination.") (quotations omitted). To do so, "a plaintiff must allege that 'she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.' " Brown , 756 F.3d at 230 (quoting Graham v. Long Island R.R. , 230 F.3d 34, 39 (2d Cir. 2000) ).[17] "[A]dverse actions taken against employees who are not similarly situated cannot establish an inference of discrimination." Littlejohn , 795 F.3d at 312.
"Ordinarily, whether two employees are similarly situated presents a question of fact, rather than a legal question to be resolved on a motion to dismiss." Brown , 756 F.3d at 230 (quotations and alterations omitted). However, at the pleading stage, it is insufficient for a plaintiff to make naked assertions of disparate treatment without factual allegations indicating those employees treated differently were similarly situated. The "plaintiff must still identify at least one comparator to support a minimal inference of discrimination; otherwise the motion to dismiss stage would be too easy to bypass." Goodine v. Suffolk Cty. Water Auth. , No. 14-CV-4514, 2017 WL 1232504, at *4 (E.D.N.Y. Mar. 31, 2017) ; see, e.g. , White v. Roosevelt Union Free Sch. Dist. Bd. of Educ. , No. 15-CV-1035, 2016 WL 4705674, at *6 (E.D.N.Y. Aug. 8, 2016) (finding plaintiff failed to adequately allege disparate treatment, in part because the complaint was "devoid of facts regarding [his] co-teachers"); Henry , 18 F. Supp. 3d at 412 (dismissing disparate treatment claims because allegations were conclusory and "lack[ed] factual allegations indicating that the[ ] Caucasian employees were similarly situated to Henry or engaged in similar conduct"); Odom v. Columbia Univ. , 906 F. Supp. 188, 194-95 (S.D.N.Y. 1995) ("Odom's second amended complaint contains nothing more than accusations of race-based discrimination and unequal treatment. Odom does not refer to a single situation in which a student, let alone a similarly situated student, was treated differently by Columbia.... Even on a motion to dismiss, a court cannot accept naked assertions in a complaint that does not set forth supporting allegations of facts.") (quotations omitted).
*515 Here, Sosa alleges that Berger and the NYCDOE regularly granted accommodation requests to Caucasian, non-African American, non-disabled teachers, (Sosa II Compl. ¶¶ 49-50), and that Defendants have discriminatorily applied workplace rules to Sosa in relation to other Caucasian teachers, (id. ¶ 60). However, Sosa makes no mention of who these other teachers were, how their requests were similar to hers, or any other facts that would elevate her allegation beyond that of a "naked assertion." See, e.g. , Stinnett v. Delta Air Lines, Inc. , 278 F. Supp. 3d 599, 612 (E.D.N.Y. 2017) (dismissing Title VII disparate treatment claims because "Plaintiff failed to demonstrate that she was similarly situated in all material respects to the male employees she identifies") (quotations omitted); Goodine , 2017 WL 1232504, at *4 ("Plaintiff refers to a generic class of white probationary employees, which is insufficient even at the pleadings stage.").
Thus, to the extent Counts 1 and 2 rely on a disparate treatment theory to meet plaintiff's burden of alleging a prima facie case, they are dismissed for failure to state a claim.
C. Hostile Work Environment (Counts 1 and 2)
Consistent with her practice-in both the briefs and the Complaint-of simply labeling claims without explaining, Sosa also couches the § 1981 claims (specifically Counts 1 and 2) as ones for a hostile work environment.
Claims of hostile work environment are actionable under § 1981. Littlejohn , 795 F.3d at 320 ; see, e.g. , Amaya v. Ballyshear LLC , 295 F. Supp. 3d 204, 223-25 (E.D.N.Y. 2018) (considering hostile work environment claims brought under § 1981 on a motion to dismiss). "A successful[ ] claim pleads conduct that (1) is objectively severe or pervasive-that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [membership in a protected class]." Amaya , 295 F. Supp. 3d at 223-24 (quotations and alterations omitted).
"The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Littlejohn , 795 F.3d at 321 (quoting Raspardo v. Carlone , 770 F.3d 97, 114 (2d Cir. 2014) ). In other words, "a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Id. at 320-21 (quotations omitted). The Court will look to factors such as frequency and severity of the conduct, "whether it is physically threatening or humiliating, ... and whether it unreasonably interferes with an employee's work performance" under the totality of the circumstances. Id. at 321 (quotations omitted). "[T]o survive a motion to dismiss, a plaintiff need only plead facts sufficient to support the conclusion that she was faced with harassment of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." Amaya , 295 F. Supp. 3d at 224 (quotations and alterations omitted).
Sosa's hostile work environment claim is predicated on Defendants' failure to interact and accommodate her medical requests, (Sosa II Compl. ¶¶ 39-53), and on the same categories of allegations that form the basis of her discrimination claims, namely lack of a Thursday prep period, inconsistent enforcement of workplace rules, and alleged professional misconduct, (Rebuttal to Verified Answer *516 ¶¶ 25, 27, 61-63, 88). In addition, Sosa's hostile work environment claim is predicated on certain miscellaneous allegations, namely her supervisor's attempt to foment opposition towards her and her exclusion from workplace social events. (Supra at 503-04; Rebuttal to Verified Answer ¶¶ 51-52, 55).
Assuming for the moment that Sosa did allege that she was faced with an abusive working environment, her hostile work environment claims would be dismissed-Sosa has not adequately alleged causation. A plaintiff must, even at the pleading stage, allege some facts "that would allow a court to draw a reasonable inference that [she] was subjected to any mistreatment or adverse action because of her [protected characteristic]." Lucio v. N.Y.C. Dep't of Educ. , 575 F. App'x 3, 5 (2d Cir. 2014) ; see also Alfano v. Costello , 294 F.3d 365, 377 (2d Cir. 2002) ("Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination."); Brown v. Henderson , 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic.").
That is, Sosa must make some non-conclusory allegation that suggests that the conduct that is the basis of the hostile work environment was as a result of her race or skin color. There is no such allegation, either in the Complaint or the EEOC documents attached to the Complaint. As such, the § 1981 claims-namely Counts 1 and 2-should be dismissed without prejudice to the extent they allege a hostile work environment. See, e.g. , Lucio , 575 F. App'x at 5 (affirming dismissal of hostile work environment claims based on failure to plead facts indicating causation); De La Peña v. Metro. Life Ins. Co. , 953 F. Supp. 2d 393, 418 (E.D.N.Y. 2013) (dismissing § 1981 and Title VII hostile work environment claims because the plaintiff "failed to plead that a hostile work environment was created and existed because of his protected status, either race, color, or national origin" and failed to "plead a [causal] connection between his protected status and the alleged hostile work environment."), aff'd , 552 F. App'x 98 (2d Cir. 2014).
D. Retaliation (Count 3)
Sosa alleges in Count 3 that Defendants Berger and the NYCDOE retaliated against her for filing Sosa I in violation of § 1981 and § 1983. (Sosa II Compl. ¶¶ 31, 80; Pl.'s Mem. of Law in Opp'n, Dkt. No. 21 ("Sosa Resp. Mem.") at 15-16 ("Plaintiff SOSA alleges she is being punished and denied her rights in retaliation for being engaged in the prior lawsuit.") ). Because of the lack of temporal proximity between the alleged protected activity-the filing of Sosa I -and the retaliatory events, and the absence of any other allegation of a causal connection, the retaliation claim must be dismissed.
Retaliation claims can be brought under § 1981. Littlejohn , 795 F.3d at 315 & n.14 (citing CBOCS W., Inc. v. Humphries , 553 U.S. 442, 446, 128 S.Ct. 1951, 170 L.Ed.2d 864 (2008) ); see, e.g. , James v. Countrywide Fin. Corp. , 849 F. Supp. 2d 296, 320 (E.D.N.Y. 2012).
To meet the burden for a retaliation claim at the initial stage of a proceeding, "a plaintiff must present evidence that shows '(1) participation in a protected activity; (2) that the defendant knew of the *517 protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.' " Littlejohn , 795 F.3d at 315-16 (quoting Hicks v. Baines , 593 F.3d 159, 164 (2d Cir. 2010) ); see also Amaya , 295 F. Supp. 3d at 226. As with other discrimination claims subject to the burden-shifting framework, "the allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under McDonnell Douglas [.]" Littlejohn , 795 F.3d at 316. In other words, "for a retaliation claim to survive ... a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated-or took an adverse employment action-against [her], (2) 'because' [she] has opposed any unlawful employment practice." Vega , 801 F.3d at 90 (Title VII).[18] "[A] 'plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law.' " La Grande v. DeCrescente Distrib. Co. , 370 F. App'x 206, 212 (2d Cir. 2010) (quoting Treglia v. Town of Manlius , 313 F.3d 713, 719 (2d Cir. 2002) ).
The Complaint in this case alleges various acts of retaliation that took place following the filing of Sosa I on December 4, 2014. Sosa's general allegations of a failure to accommodate, which could be interpreted as retaliation for Sosa I , began in April 2016. (Sosa II Compl. ¶ 37). The rest of Sosa's allegations of retaliation, namely being accused of professional misconduct and being subjected to the inconsistent application of workplace rules as described in detail above, occurred between January 2017 and June 2017. (See Rebuttal to Verified Answer ¶¶ 13-65). Defendants argue that these actions do not amount to adverse employment actions and that there is no causal connection between the filing of the Sosa I lawsuit and the actions against Sosa. (Mot. to Dismiss Mem. at 25).
An adverse employment action in the context of retaliation is different than in the context of discrimination. In the context of retaliation, "an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.' " Vega , 801 F.3d at 90 (quoting Burlington N. & Santa Fe Ry. Co. v. White , 548 U.S. 53, 57, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) ); see, e.g. , Patane v. Clark , 508 F.3d 106, 116 (2d Cir. 2007) (finding plaintiff's allegations that employers failed to assign her work in order to induce her to quit her job met this standard for adverse employment action because it would cause someone to "think twice" about engaging in protected activity). This "covers a broader range of conduct than does the adverse-action standard for claims of discrimination." Vega , 801 F.3d at 90 ; see, e.g. , id. at 89, 91-92 (finding the same conduct that did not constitute an adverse employment action in the context of discrimination did constitute an adverse employment action in the context of retaliation).[19]
*518 Here, Sosa makes allegations that she was subject to a bevy of misconduct. She was accused of rules violations while other teachers were permitted to breach those rules, (Sosa II Compl. ¶ 60), was not given a desired preparation period, (id. ¶ 48), was falsely accused of workplace misconduct, (id. ¶ 61), among other things.[20] Courts have found such allegations to be too minor to constitute an adverse action, even in the context of a retaliation claim. See Collymore v. City of New York , No. 16-CV-08270, 2018 WL 3014093, at *9 (S.D.N.Y. June 14, 2018) ("Plaintiff fails, however, to plead ... adverse employment action. She alleges that, following her complaints, she: had her shift changed to one that did not permit requesting overtime ...; was yelled at and humiliated in meetings; was heavily scrutinized by supervisors; threatened with conduct violations; was forced to work outside of her work hours without compensation at an unspecified time; was denied training opportunities; [and] was denied overtime ... even when she needed to work beyond her scheduled work day to accommodate vendors[.] Plaintiff's allegations describe petty slights and minor annoyances, and do not depict adverse actions sufficient to support a viable retaliation claim.") (quotations and citations omitted); Taylor v. N.Y.C. Dep't of Educ. , No. 11-CV-3582, 2012 WL 5989874, at *9-10 (E.D.N.Y. Nov. 30, 2012) (finding "the denial of [plaintiff's] request to return to the general classroom; her receipt of a citation for failing to have a hallway display of her students' work on June 23, 2010; [and] the denial of her transfer to a teaching position at PS 14" failed to constitute adverse employment action in the context of retaliation) (quotations and citations omitted). Moreover, with respect to these allegations, "she fails to allege any specifics about" them, "including, most crucially, when these allegations occurred in relation to her complaints. Without such factual allegations, the Court cannot determine that there is a sufficient basis for an inference that such denials were retaliatory and 'might have dissuaded a reasonable worker from' engaging in protected activity." Collymore , 2018 WL 3014093, at *9 (citations omitted).
But even assuming that Sosa has identified some sufficiently adverse actions, her retaliation claim would still be subject to dismissal because she has failed to make sufficient allegations of causation.
A plaintiff must allege that there is a causal connection between the alleged change in employment and the protected activity. "To adequately plead causation, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action.... 'But-for' causation does not, however, require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." Duplan , 888 F.3d at 625. This burden is "de minimis. " Id. at 626.
Where a plaintiff has not alleged specific facts on causation, i.e. facts to show, directly or indirectly, that retaliatory animus was the basis of the adverse action, the Court nonetheless may infer that causation has been pled based on temporal proximity. Here, Sosa has not identified or pled any facts that go to retaliatory animus or causation generally. Indeed, her briefs *519 only substantively argue about temporal proximity.[21]
Her retaliation claim survives, therefore, only if the time period between the protected activity and the adverse action is " 'very close.' " Riddle v. Citigroup , 640 F. App'x 77, 79 (2d Cir. 2016) (quoting Clark Cty. Sch. Dist. v. Breeden , 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) ). Motions to dismiss have been granted when the temporal proximity exceeds one year. E.g. , Riddle , 640 F. App'x at 79 (16 months) ; Shaw v. McDonald , 715 F. App'x 60, 62 (2d Cir. 2018) (12 months). Even two or three months have been found to be insufficiently close. Brown v. City of New York , 622 F. App'x 19, 20 (2d Cir. 2015) ("The time lapses between Brown's protected activities and the alleged retaliatory acts-ranging from two months to several years-were simply too attenuated to establish that the alleged adverse employment actions were the product of a retaliatory motive absent other supporting factual allegations.") (collecting cases); Cunningham v. Consol. Edison Inc. , No. 03-CV-3522, 2006 WL 842914, at *15 (E.D.N.Y. Mar. 28, 2006) ("[A] passage of two months between the protected activity and the adverse employment action seems to be the dividing line.") (collecting cases).
Sosa filed Sosa I on December 4, 2014. (Sosa I Compl.). The alleged failure to accommodate began in April 2016, almost one and a half years after Sosa engaged in the protected activity. (See Sosa II Compl. ¶ 37). The rest of the misconduct alleged in Sosa II , such as the allegations of professional misconduct and inconsistent application of workplace rules, occurred after Sosa returned to work for the 2016-2017 school year, namely from January 2017 to May 2017. (See, e.g. , Rebuttal to Verified Answer ¶¶ 13-65). Causation could not be inferred from the timing of this conduct, even at the motion to dismiss stage.[22]
In her brief, Sosa-albeit in passing-makes a different causation argument. She argues that the retaliatory conduct was close in time to the filing of her EEOC Complaint in January 2017. (Sosa Resp. Mem. at 6) ("The temporal proximity of Defendants' retaliatory conduct to the activities on the docket in the Court's prior action, and to the events in the proceedings between these parties before the Equal Employment Opportunity Commission are readily ascertainable."). The Rebuttal to the Verified Answer filed in connection with the EEOC Complaint does make such an allegation. (Rebuttal to Verified Answer ¶ 41). The Rebuttal is attached to the Complaint and alleges that *520 following her initiation of the EEOC proceeding on January 12, 2017, Defendant Berger falsely accused her of misconduct on February 27 (namely that she was AWOL on February 17) and also manipulated her attendance records to buttress the false allegation. (Rebuttal ¶ 40-41). However, the retaliation count in the Complaint narrows the retaliation claim to retaliation on the basis of filing Sosa I , and makes no mention the filing of the EEOC Complaint that preceded this action. (See Sosa II Compl. ¶ 80).
But even if the Complaint properly relied on the EEOC Complaint as the protected activity leading to retaliation-and resuscitated the allegations from the Rebuttal-the retaliation claim would still fail. Although the events are temporally proximate (the accusation of being AWOL occurs six weeks after the EEOC filing), Sosa did not suffer an adverse employment action when she was accused of being AWOL. The Complaint alleges no negative consequences resulting from the allegation of absenteeism. And the alleged scrutiny attendant to the false allegation is insufficient to constitute an adverse action. See, e.g. , Jordan v. Potter , No. 05-CV-3005, 2008 WL 11435760, at *11 (E.D.N.Y. May 20, 2008) ("The wrongful reporting of plaintiff as AWOL, which was adjusted approximately one (1) month later, and for which there was no evidence of injury or harm to plaintiff, does not constitute a materially adverse employment action. At most, the reporting of plaintiff AWOL constituted a minor annoyance insufficient to establish a prima facie retaliation claim.") (citations omitted); Johnson v. Lew , No. 13-CV-1072, 2017 WL 3822047, at *14 (N.D.N.Y. Aug. 30, 2017) ("Plaintiff has not identified any evidence from which it may be reasonably inferred that his being charged with AWOL ... constitutes a materially adverse action for purposes of his retaliation claim.... [T]he record does not support the conclusion that Plaintiff was disciplined or that he was terminated, was demoted, or suffered any other employment-related consequences as a result of being charged with AWOL on the dates at issue (or, for that matter, on any dates). Simply stated, being charged with AWOL would not have dissuaded a reasonable worker from making or supporting a charge of discrimination."); Collymore , 2018 WL 3014093, at *9 ; Taylor , 2012 WL 5989874, at *9-10. Therefore, Sosa's retaliation claim under § 1981 and § 1983 -Count 3-must be dismissed because causation cannot be inferred with respect to Sosa I as the protected activity and because Sosa did not suffer an adverse employment action with respect to the EEOC Complaint as the protected activity.[23]
IV. Title VII Claims (Counts 4 through 7)
Sosa alleges, in Counts 4 through 7, that the NYCDOE unlawfully discriminated against her and created a hostile work environment based on her race, skin color, and national origin, as well as retaliated against her, in violation of Title VII.[24] Title *521 VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Further, Title VII protects against retaliation by making it unlawful "for an employer to discriminate against any of his employees ... because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Id. § 2000e-3(a).
Discrimination claims under Title VII, including those based on disparate treatment, and Title VII hostile work environment claims, are subject to the same standards as those under § 1981 and § 1983. See Littlejohn , 795 F.3d at 312, 320-21 ; see also Vega , 801 F.3d at 88-89 (analyzing Title VII and § 1983 together); Bermudez v. City of New York , 783 F. Supp. 2d 560, 576 (S.D.N.Y. 2011) ("Claims of employment discrimination under Section 1981 are analyzed under the same framework that applies to Title VII claims and claims under Section 1983.") (collecting cases). Therefore, these Title VII claims-Counts 4 through 6-must be dismissed for the same reasons as those described above: the unlawful discrimination claims fail to allege an adverse employment action; the disparate treatment allegations-with respect to whether other employees are similarly situated-fail to create an inference of discrimination; and the hostile work environment allegations fail to allege in a non-conclusory fashion that the abusive environment was because of Sosa's membership in a protected class.
Retaliation claims under Title VII are also subject to the same standards as those under § 1981 and § 1983. See Littlejohn , 795 F.3d at 315 ("Retaliation claims under Title VII and § 1981 are both analyzed pursuant to Title VII principles and the McDonnell Douglas burden-shifting evidentiary framework."); Amaya , 295 F. Supp. 3d at 226 (" 'The elements required to make out a claim of retaliatory discharge under 42 U.S.C. § 1981 are the same as those required to make out such a claim under Title VII.' ") (quoting Taitt v. Chem. Bank , 849 F.2d 775, 777 (2d Cir. 1988) ). Therefore, Sosa's Title VII retaliation claim-Count 7-must be dismissed for the same reason explained above: the claim based on the filing of Sosa I as the protected activity fails because Sosa did not adequately plead causation and the claim based on the filing of the EEOC Complaint as the protected activity fails because Sosa did not suffer adverse employment action.
* * *
The Court has serious doubts as to whether Sosa's claims have met the Title VII exhaustion requirements-i.e. , the requirement that her federal court claims be brought in an administrative proceeding or be reasonably related to those brought in such a proceeding. See Deravin v. Kerik , 335 F.3d 195, 200-01 (2d Cir. 2003). Sosa's EEOC Complaint alleges only disability discrimination. (See generally EEOC Verified Compl.). Her race, skin color, and national origin discrimination claims appear not to "fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." Deravin , 335 F.3d at 201 (quotations omitted). The Court gave Defendants ample opportunity to make this argument.
*522 (See Order dated Nov. 13, 2018 (directing Defendants to "clarify whether they are raising exhaustion as a defense") ). They did not assert this precise argument, instead making other arguments about timeliness that either do not constitute exhaustion or are simply without merit. (See generally Reply in Support following Nov. 13, 2018 Order dated Nov. 27, 2018, Dkt. No. 28 ("Reply to Nov. 13 Order") ).[25]
Under current Second Circuit law, a plaintiff's failure to exhaust discrimination claims in an EEOC complaint is an affirmative defense, need not be pled in the complaint, and does not implicate the Court's subject matter jurisdiction. See Fowlkes v. Ironworkers Local 40 , 790 F.3d 378, 385 (2d Cir. 2015) ("[T]he failure of a Title VII plaintiff to exhaust administrative remedies raises no jurisdictional bar to the claim proceeding in federal court."). The Supreme Court has granted certiorari in Fort Bend County v. Davis to resolve a circuit split on this issue-"[w]hether Title VII's administrative exhaustion requirement is a jurisdictional prerequisite to suit, as three Circuits have held, or a waivable claim-processing rule, as eight Circuits have held." Petition for a Writ of Certiorari at i, Fort Bend County v. Davis , --- S.Ct. ---- (2019) (No. 18-525), 2018 WL 5245718 ; see Fort Bend County v. Davis , 893 F.3d 300 (5th Cir. 2018), cert. granted , --- U.S. ----, 139 S.Ct. 915, 202 L.Ed.2d 641 (2019). Depending on the Supreme Court's resolution of the issue, this Court may have to revisit whether it has subject matter jurisdiction over Sosa's Title VII claims, even if properly pled.
V. ADA Claims
The remaining federal claims are in Counts 18 and 19, where Sosa alleges violations of the ADA, which she labels as disability discrimination, hostile work environment, and retaliation. Under the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).
Berger cannot be liable because an individual cannot be liable for discrimination or retaliation claims under the ADA. See Spiegel v. Schulmann , 604 F.3d 72, 79 (2d Cir. 2010) (holding that "in the context of employment discrimination, the retaliation provision of the ADA ... cannot provide for individual liability"); Sherman v. County of Suffolk , 71 F. Supp. 3d 332, 343 (E.D.N.Y. 2014). Counts 18 and 19, to the extent they allege violations of the ADA,[26] must therefore be dismissed with prejudice as to Defendant Berger. See, e.g. , Forgione v. City of New York , No. 11-CV-5248, 2012 WL 4049832, at *4 (E.D.N.Y. Sept. 13, 2012) ("[T]he ADA does not create liability for individual defendants sued in their personal capacities *523 for employment discrimination. Accordingly, I dismiss Forgione's ADA claims against Kavanagh and Dann in their personal capacities.") (citations omitted).
Again, the Complaint simply attaches labels to claims, and Sosa's briefs make little attempt to distinguish the bases for the claims. With respect to the NYCDOE, for the reasons explained below, the allegations in Counts 18 and 19 of discrimination, failure to accommodate, hostile work environment, and retaliation under the ADA must be dismissed.
A. Disability Discrimination (Count 18)
To make out a prima facie case of disability discrimination, a plaintiff must show that (1) the employer is subject to the ADA; (2) the plaintiff was a person with a disability within the meaning of the ADA; (3) the plaintiff was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) the plaintiff suffered an adverse employment action because of her disability.
Vale , 80 F. Supp. 3d at 433. As with other discrimination claims, "a plaintiff 'need only give plausible support to a minimal inference of discriminatory motivation' at the pleading stage." Kopchik v. Town of E. Fishkill , No. 18-CV-1182, 2018 WL 6767369, at *4, 759 Fed App'x 31, 36 (2d Cir. Dec. 26, 2018) (quoting Littlejohn , 795 F.3d at 316 ); see also Thomson v. Odyssey House , No. 14-CV-3857, 2015 WL 5561209, at *16 (E.D.N.Y. Sept. 21, 2015), aff'd , 652 F. App'x 44 (2d Cir. 2016).
Discrimination claims brought under the ADA are analyzed in the same way as such claims brought under § 1981 and Title VII. See Adejare v. St. Charles Hosp. & Rehab. Ctr , No. 16-CV-805, 2017 WL 2559937, at *2 (E.D.N.Y. June 13, 2017) ("[Plaintiff's] discrimination claims pursuant to § 1981 [and] the ADA ... are also dismissed as those claims are analyzed under the same standards as Title VII claims."); see also Thomson , 2015 WL 5561209, at *16 (applying the same standards for discrimination claims under the ADA and Title VII on a motion to dismiss). Because the complained-of misconduct does not constitute an adverse employment action for Sosa's other discrimination claims under Title VII or § 1981, it could not be so under the ADA. This claim, therefore, must be dismissed.
B. Failure to Accommodate (Count 18)
A failure to accommodate claim "is more appropriately viewed as a separate claim under the ADA" rather than as part of a traditional discrimination claim based on adverse employment action. Vale , 80 F. Supp. 3d at 436. To state a failure to accommodate, a plaintiff must allege "(1) [she] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." Graves v. Finch Pruyn & Co. , 457 F.3d 181, 184 (2d Cir. 2006) (quotations omitted).
The Complaint alleges that the "defendants fail and continue, without any cause, to refuse to provide Ms. Sosa with her ADA medically approved accommodation request." (Sosa II Compl. ¶ 67). As Defendants argue-(Mot. to Dismiss Mem. at 10-11)-Sosa's Complaint, when read without the incorporated documents, gives the misimpression that none of her requests for accommodation were granted. For example, Sosa refers in her Complaint to the August 10, 2016 HR Connect letter, stating this letter informed her that she was not granted her scheduling requests and that use of her usual classroom "[could *524 not] be accommodated as reasonable." (Sosa II Compl. ¶ 48 (quotations omitted) ). The actual letter, attached as an exhibit to Sosa's Complaint, states that her requests were "partially approved" and that Sosa was given her requested schedule on all but one day of the week. (NYCDOE Verified Answer, Ex. D). Sosa's Complaint makes no mention at all of the August 19, 2016 HR Connect letter that reaffirmed the partial approval of her request and gave her use of her usual classroom, even though this too was attached to her Complaint. (Id. , Ex. K). In fact, in Sosa's EEOC filings, she acknowledges that she was only denied her requested schedule one day per week. (See Rebuttal to Verified Answer ¶ 88 ("I gave Respondents the schedule that I worked out with my doctors, based on my medications and the needs of my job performance. Respondent[s] then partially granted [the schedule], but summarily denied my accommodation for one day out of the week, Thursday[.]"). The Court is not required to accept as true the allegations in the Complaint, in the face of documents that state otherwise. Matusovsky v. Merrill Lynch , 186 F. Supp. 2d 397, 399-400 (S.D.N.Y. 2002) ("[A] court may consider documents attached to the complaint as exhibits, or incorporated by reference, as well as any documents that are integral to, or explicitly referenced in, the pleading. If a plaintiff's allegations are contradicted by such a document, those allegations are insufficient to defeat a motion to dismiss.") (citations omitted).
On the basis of what Sosa's pleadings indicate actually happened-that she suffered from delays in her accommodation requests but was eventually granted the requests on all but one day of the week-the Court finds Sosa's Complaint insufficient to state a claim of failure to accommodate. Sosa's papers do not point out that she has received basically all of her requested accommodations; they instead invoke the failure of Berger to engage in the collective bargaining process and make allegations that Berger has never been disciplined. (Sosa Resp. Mem. at 14-15). These arguments about the collective bargaining process are far afield and inapposite; she does not tie those allegations to any process required under the ADA. The inquiry at this point-given the concessions evident from the papers attached to the Complaint-is whether denial of a single prep period could plausibly amount to a failure to accommodate. That is, whether there is some basis to infer that without this Thursday prep period, viewed in the light of the other accommodations that were provided, Sosa could not meet the essential functions of her job. Nuchman v. City of New York , 639 F. App'x 48, 49 (2d Cir. 2016) ("As for Nuchman's claims for failure to accommodate, she has presented no evidence to show how any of her accommodation requests that DOE did not grant were necessary for her to perform the essential functions of her job at the Reassignment Center."). In the absence of any argument or allegation about the importance of a single prep period or how it would affect Sosa's disability, the Court has no basis to infer that it ever could. "Because Defendants[ ] did attempt to[, and did,] accommodate Plaintiff, [she] fails to state a plausible failure to accommodate claim under the ADA[.]" Goonewardena v. N. Shore Long Island Jewish Health Sys. , No. 11-CV-2456, 2014 WL 1271197, at *10 (E.D.N.Y. Mar. 26, 2014). This claim therefore must be dismissed.[27]
*525 C. Hostile Work Environment (Count 18)
Although it is unclear whether the ADA provides for hostile work environment claims, most district courts in the Second Circuit have entertained such claims. See Dollinger v. N.Y. State Ins. Fund , 726 F. App'x 828, 831 (2d Cir. 2018) ("We have not yet decided whether hostile-work-environment claims are cognizable under the ADA."); see, e.g. , Forgione , 2012 WL 4049832, at *7 (analyzing a hostile work environment claim under the ADA after recognizing that whether such a claim is available is "a question which the Second Circuit has not yet answered"); Monterroso v. Sullivan & Cromwell, LLP , 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008) (same). To the extent courts have entertained such claims, they are analyzed under the same framework as hostile work environment claims under Title VII, § 1981, and § 1983. Moore v. City of New York , No. 15-CV-6600, 2017 WL 35450, at *22 (S.D.N.Y. Jan. 3, 2017), report and recommendation adopted , 2017 WL 1064714 (Mar. 20, 2017).
The problems with Sosa's hostile work environment claims based on race, national origin, and skin color discrimination-namely the failure to allege the requisite causation-also imperil her disability hostile work environment claim. Sosa has failed to allege that the abusive incidents were because of any disability that she had. This claim, therefore, must be dismissed. See, e.g. , id. at *22-23 (dismissing ADA hostile work environment claims for failure to allege hostile work environment occurred because of plaintiff's membership in a protected class).
D. Retaliation (Count 19)
Section 12203 of the ADA prohibits retaliation for opposing disability discrimination. 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."). To establish a prima facie claim of retaliation under the ADA, a plaintiff "must show that: (1) [she] engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity." Treglia , 313 F.3d at 719 ; see also Stinnett , 278 F. Supp. 3d at 615-16 (identifying these elements on a motion to dismiss). In this way, a retaliation claim under the ADA operates like a Title VII and § 1981 claim for retaliation. Karam v. County of Rensselaer , No. 13-CV-1018, 2016 WL 51252, at *13 (N.D.N.Y. Jan. 4, 2016) ("Claims of retaliation under the ADA, ... [and] 42 U.S.C. § 1981... are analyzed under the same standard as Title VII claims.").[28] And as with other *526 discrimination claims, "[t]he 'allegations in the complaint need only give plausible support to the reduced prima facie requirements.' " Stinnett , 278 F. Supp. 3d at 616 (quoting Littlejohn , 795 F.3d at 316 ).
The problem that is present with Sosa's retaliation claim under Title VII and § 1981-namely causation-is also present for the claim brought under the ADA. Because there was no non-conclusory allegation that any misconduct was in retaliation for the filing of Sosa I and because the alleged misconduct began a year and a half after the filing of that lawsuit, (compare Sosa I Compl. (filed December 4, 2014), with Sosa II Compl. ¶ 37 (indicating alleged misconduct began in April 2016) ), Sosa has not sufficiently alleged a causal connection. See, e.g. , Stinnett , 278 F. Supp. 3d at 616 (dismissing ADA retaliation claim because the "time between the alleged violation ... and Plaintiff's termination ... fails to allow the Court to draw a connection between" the protected activity and the adverse employment action).
VI. State and City Law Claims (Counts 8 through 18)
A federal district court has "original jurisdiction" over all civil actions arising under the laws of the United States, 28 U.S.C. § 1331, and civil actions where the amount in controversy exceeds $ 75,000, exclusive of interests and costs, and "is between ... citizens of different States," id. § 1332(a)(1).
The Court has recommended dismissal of the § 1981, § 1983, Title VII, and ADA claims, i.e. , all federal claims and all claims giving rise to original jurisdiction. As such, the Court must now decide whether supplemental jurisdiction should be exercised over the remaining state law claims. Id. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction[.]"). When all federal claims are eliminated before trial, the balance of factors to be considered-including judicial economy, convenience, fairness, and comity-typically points towards declining to exercise supplemental jurisdiction over any remaining state-law claims. Kolari v. N.Y.-Presbyterian Hosp. , 455 F.3d 118, 122 (2d Cir. 2006).
Courts have generally found that where federal discrimination claims are dismissed, declining to exercise supplemental jurisdiction over remaining state claims is appropriate. See, e.g. , Francis v. Hartford Bd. of Educ. , No. 17-3308, 2019 WL 211503, at *3, 760 Fed. App'x 34, 38 (2d Cir. 2019) (Summary Order dated Jan. 16, 2019). It is, therefore, also respectfully recommended that the Court decline to exercise supplemental jurisdiction and dismiss the remaining state-law claims without prejudice.
VII. Leave to Amend
Sosa requests leave to amend her Complaint to the extent her claims are dismissed. (Sosa Resp. Mem. at 18). "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. County of Nassau , 180 F.3d 42, 53 (2d Cir. 1999). This is especially true for claims involving civil *527 rights. Mian v. Donaldson, Lufkin & Jenrette Sec. Corp. , 7 F.3d 1085, 1087 (2d Cir. 1993) ("[W]e think the district court should not have dismissed Mian's complaint with prejudice, but should have given him the opportunity to amend his complaint in light of the policy to liberally construe civil rights complaints[.]"). "However, a district court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated." Perri v. Bloomberg , No. 11-CV-2646, 2012 WL 3307013, at *4 (E.D.N.Y. Aug. 13, 2012) (citing Chavis v. Chappius , 618 F.3d 162, 170 (2d Cir. 2010) ).
The Court recommends that Sosa be given leave to amend her Complaint as to all claims except those against Defendant Berger under Title VII and the ADA, as no individual liability under those statutes is possible. See, e.g. , Warshun v. N.Y. Cmty. Bancorp, Inc. , 957 F. Supp. 2d 259, 265 (E.D.N.Y. 2013) (denying leave to amend complaint against individual defendants under ADA); Bonfiglio v. N.Y. Presbyterian Hosp. Weill Cornell Med. Ctr. , No. 10-CV-4939, 2011 WL 2436706, at *3 (S.D.N.Y. June 16, 2011) (denying leave to amend complaint against individual defendants under Title VII).
Conclusion
For the reasons described above, the Court respectfully recommends that the motion to dismiss all the federal claims be granted and leave to amend be granted, as indicated above.
Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. See 28 U.S.C. § 636(b)(1) ; Fed. R. Civ. P. 72(b)(2) ; see also Caidor v. Onondaga County , 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[ ] [judge's] report operates as a waiver of any further judicial review of the magistrate[ ] [judge's] decision.") (quotations omitted).
SO ORDERED.
January 22, 2019

Plaintiff has a previously-filed lawsuit against Defendants, Sosa v. N.Y.C. Dep't of Educ. , No. 14-CV-7094 ("Sosa I "), that is pending before the Honorable LaShann DeArcy Hall in this district.

All four objections focus on Plaintiff's federal claims brought under § 1981 and § 1983, Title VII, and the ADA.

Though Plaintiff brings unlawful discrimination claims under § 1981, Title VII, and the ADA, Plaintiff's objection only mentions her ADA claim. (See Pl.'s Objs. at 10 ("It's not simply that Defendants violated Sosa's rights under the ADA ....") (emphasis added); see also id. at 13 (citing McMillian v. City of New York , an ADA disability discrimination and failure to accommodate decision).) However, given that the standard for an adverse employment action under Title VII and § 1981 are the same as under the ADA, see, e.g. , Medcalf v. Thompson Hine LLP , 84 F.Supp.3d 313, 329 n.14 (S.D.N.Y 2015) (noting that the standard for an adverse employment action under the ADA and Title VII are the same); Bermudez v. City of New York , 783 F.Supp.2d 560, 576 (S.D.N.Y. 2011) (noting that the standard for an adverse employment action under Title VII and § 1981 are the same), the Court's reasoning as to the lack of an adverse employment action applies equally to Plaintiff's claims of unlawful discrimination under all three statutes.

Notably, while Plaintiff asserts a separate failure to accommodate claim under the ADA (Complaint, Dkt. 1, at ¶¶ 122-24), she does not object to the R & R's conclusion that this claim should be dismissed.

Though Plaintiff does not mention her retaliation claim in this objection, a retaliation claim-whether brought under § 1981, Title VII, or the ADA-requires an adverse employment action as well. The Court reviews the R & R's retaliation claim analysis for clear error. See DiPilato v. 7-Eleven, Inc. , 662 F.Supp.2d 333, 339 (S.D.N.Y. 2009) ("The district court may adopt those portions of a report and recommendation to which no timely objections have been made, provided no clear error is apparent from the face of the record."). The standard for an adverse employment action in the retaliation context is the same under all three statutes. See Thomson v. Odyssey House , No. 14-CV-3857 (MKB), 2015 WL 5561209, at *19 (E.D.N.Y. Sept. 21, 2015) ("All four statutes [Title VII, the ADA, § 1981, and the New York State Human Rights Law] contain similar anti-retaliation provisions, analyzed under the McDonnell Douglas burden-shifting framework."). "It is now clear that Title VII's anti-discrimination and anti-retaliation provisions are not coterminous; anti-retaliation protection is broader ...." Hicks v. Baines , 593 F.3d 159, 165 (2d Cir. 2010) (internal quotations and citation omitted).
"Title VII's anti-retaliation provision applies broadly to employer actions that would have been materially adverse to a reasonable employee or job applicant. Actions are materially adverse if they are harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."Id. For example,
[t]he Second Circuit has found that negative evaluation letters, express accusations of lying, assignment of lunchroom duty, reduction of class preparation periods, failure to process teacher's insurance forms, transfer from library to classroom teaching as an alleged demotion, and assignment to classroom on fifth floor which aggravated teacher's physical disabilities may qualify as adverse employment actions for purposes of a retaliation claim,
Taylor v. New York City Dep't of Educ. , No. 11-CV-3582, 2012 WL 5989874, at *9 (E.D.N.Y. Nov. 30, 2012) (internal quotations and citation omitted).
The Court finds that the R & R is not clearly erroneous for concluding that Plaintiff failed to adequately allege an adverse employment action for her retaliation claim. Though adverse employment actions are defined more broadly for retaliation claims, "[p]etty slights, minor annoyances, personality conflicts, the sporadic use of abusive language, or simple lack of good manners do not rise to the level of actionable conduct in a [ ] retaliation claim." Collymore v. City of New York , No. 16-CV-08270 (LTS), 2018 WL 3014093, at *8 (S.D.N.Y. June 14, 2018). Furthermore, as discussed infra , Plaintiff's retaliation claim also separately fails for not adequately alleging causation.

The R & R finds that Plaintiff failed to adequately allege causation on both her hostile work environment and retaliation claims, but the Court infers that Plaintiff is only referring to her hostile work environment claim in this objection. Though Plaintiff never explicitly states that she is addressing only this claim, her assertion that "but for Defendant Berger's racial animus towards her, Plaintiff would be treated fairly in the workplace," (Pl.'s Objs. at 14 (emphasis added) ), suggests that is Plaintiff's intention. Compare De La Peña v. Metro. Life Ins. Co. , 953 F.Supp.2d 393, 418 (E.D.NY. 2013) (hostile work environment claims require alleging "that a hostile work environment was created and existed because of [her] protected status, either race, color, or national origin"), with Duplan v. City of New York , 888 F.3d 612, 625 (2d Cir. 2018) ("To adequately plead causation [on a retaliation claim], the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action.") (internal quotations and citation omitted).

As discussed supra , Plaintiff does not object to the R & R's causation analysis for her retaliation claim. Therefore, the Court reviews the R & R's analysis for clear error. DiPilato , 662 F.Supp.2d at 339. For a retaliation claim, causation can be inferred temporally. See Vega v. Hempstead Union Free Sch. Dist. , 801 F.3d 72, 90 (2d Cir. 2015) ("A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action."). In this case, Plaintiff filed her original action, Sosa I , in December 2014 when she was on medical leave. (Complaint at ¶¶ 10, 36.) Plaintiff began contacting school administrators in April 2016 and physically returned to work in the Fall of 2016. (See Complaint at ¶¶ 37-48.) Plaintiff alleges that Defendants started retaliating when she contacted them in April, by initially failing to grant her accommodation request, and continued to retaliate against her throughout the 2016-2017 school year. (R & R at 37.) Courts have found adequate allegations of temporal causation when the retaliatory actions began "at the first actual opportunity to retaliate."Summa v. Hofstra University , 708 F.3d 115, 128 (2d Cir. 2013) ; see also Espinal v. Goord , 558 F.3d 119, 129 (2d Cir. 2009) (finding temporal causation after six months because "it is plausible that the officers waited to exact their retaliation at an opportune time"). However, given that almost two and a half years passed between the filing of Sosa I and the first of the alleged retaliatory acts, and Plaintiff has failed to allege facts that Defendants would have been unable to retaliate earlier when she was on medical leave, the Court finds that the R & R's conclusion that Plaintiff failed to allege temporal causation is not clearly erroneous. Furthermore, Plaintiff's retaliation claim independently fails for not adequately alleging an adverse employment action, as discussed supra .

Plaintiff does not refer to her ADA disparate treatment claim in this objection.

Both parties submitted affidavits with their motion papers containing additional facts pertaining to this lawsuit. (E.g. , Affidavit/Declaration in Opposition filed by Plaintiff, dated July 9, 2018, Dkt. Nos. 19, 20; Affidavit/Declaration in Support filed by Defendant, dated July 30, 2018, Dkt. No. 24). These documents are lengthy, introduce new facts and arguments, and consist of evidentiary matter including affidavits and declarations. The Court declines to consider any of these materials-"the Court cannot consider defendants' or plaintiffs' evidentiary submissions in deciding [a] motion to dismiss," Hoy v. Inc. Vill. of Bayville , 765 F. Supp. 2d 158, 163 (E.D.N.Y. 2011) -and as a result has not evaluated the supplemental materials in deciding this motion. The Court has only considered those materials attached to the Complaint. See id. ; see, e.g. , Dechberry v. N.Y.C. Fire Dep't , 124 F. Supp. 3d 131, 135 (E.D.N.Y. 2015) (relying on documents attached to the complaint in granting motion to dismiss).

According to the NYCDOE website, https://www.p4queens.com/, P4Q provides support to special needs students at P.S. 179, P.S. 213, P.S. 270, P.S. 161, and the Skillman School, all of which are located in Queens.

The NYCDOE Verified Answer is the fourth exhibit attached to Plaintiff's Complaint, and is an answer to Sosa's EEOC Complaint. The NYCDOE Verified Answer itself has exhibits, which are labeled "A" through "M."

Prep is a non-teaching period in which teachers can prepare for class, meet with students, and grade papers. (NYCDOE Verified Answer ¶ 36).

Neither party defines "cluster" teacher.

The email also requested Sosa be transferred from P.S. 179 to P.S. 213; as stated above, this particular request was granted by the NYCDOE on July 7, 2016.

Neither party explains exactly what "HR Connect" is. The Court has inferred that it is a branch within the NYCDOE that evaluates employees' requests for medical accommodation.

The Complaint enumerates 19 causes of action, (see generally Sosa II Compl.); however, there is no cause of action 17. There are also other discrepancies in the Complaint: (1) the title for Count 12 is the same as Count 11, (see id. at 18-19); however, the facts alleged in the description of Count 12 are for discrimination based on national origin, not race, (see id. ¶ 108); (2) the title for Count 13 is the same as Counts 11 and 12 (see id. at 18-19); however, Count 13 alleges discrimination based on skin color, not race or national origin, (see id. ¶ 111); and (3) Counts 15 and 16 are substantively the same, (see id. ¶¶ 116-121). In addition, several of the headings-namely Counts 5, 6, 7, 10, 16, and 19- allege violations by only one Defendant; however, the subsequent description under those headings allege violations by both Defendants. (See Sosa I Compl. ¶¶ 87, 90, 93, 102, 120, 126). The Court considers the descriptions, rather than the headings, controlling.

Although the title of Count 15 indicates it is being brought against both the NYCDOE and Berger, whereas the title of Count 16 indicates it is being brought against the NYCDOE only, the descriptions of the claims are substantively identical. (Compare Sosa II Compl. ¶¶ 116-118, with ¶¶ 119-121). The Court thus treats these claims as the same.

Counts 18 and 19, in passing, mention the Rehabilitation Act. In light of the factual allegations contained therein, the Court does not interpret either to assert a Rehabilitation Act claim. Moreover, Sosa's briefs make no mention of the Rehabilitation Act.

There is a doctrine that precludes a party from filing duplicative litigation, one rooted in concerns of judicial efficiency. Curtis v. Citibank, N.A. , 226 F.3d 133, 138 (2d Cir. 2000) ("As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit."); Pacheco v. Home Am. , No. 11-CV-965, 2012 WL 254474, at *3 (N.D.N.Y. Jan. 27, 2012) ("The doctrine is also meant to protect parties from 'the vexation of concurrent litigation over the same subject matter.' ") (quoting Adam v. Jacobs , 950 F.2d 89, 93 (2d Cir. 1991). Defendants did not seek to dismiss the cases on this ground, or on the grounds of collateral estoppel (which also would not apply absent final judgment). Therefore, the Court has no occasion to consider the applicability of such doctrines to this case.

Generally, claims brought in New York under § 1983 are governed by a three-year statute of limitations. Duplan , 888 F.3d at 619 ; Vega v. Hempstead Union Free Sch. Dist. , 801 F.3d 72, 79 (2d Cir. 2015). Claims brought under § 1981 that were made cognizable under an amendment by Act of Congress after December 1, 1990, namely the Civil Rights Act of 1991, have a statute of limitations of four years. Wright v. City of Ithaca , 633 F. App'x 63, 64 (2d Cir. 2016) ; see 28 U.S.C. § 1658(a). When a plaintiff asserts violations of rights conferred by § 1981 against state actors through § 1983, some courts have applied a four-year statute of limitations while others have applied a three-year statute of limitations. Compare McCalla v. City of New York , No. 15-CV-8002, 2017 WL 3601182, at *32 (S.D.N.Y. Aug. 14, 2017), report and recommendation adopted , 2017 WL 4277182 (Sept. 22, 2017) ("Courts in this District therefore have held that any claims 'made possible' by the 1991 amendment to § 1981 are subject to ... [a] four-year statute of limitations-even where § 1983 serves as the vehicle for bringing those claims against state actors."), with Richardson v. City of New York , No. 17-CV-9447, 2018 WL 4682224, at *12 (S.D.N.Y. Sept. 28, 2018) ("Ultimately, because Plaintiffs have brought their Section 1981 claims pursuant to Section 1983, the claims are subject to Section 1983's three-year statute of limitations rather than Section 1981's more variable limitations period."). The Court need not resolve this issue, since this precise statute of limitations argument is not raised by Defendants. In any event, it appears that Sosa's allegations are timely. Sosa filed her Complaint on January 21, 2018 and the specific misconduct Sosa alleged began in April of 2016. (See Sosa II Compl. ¶ 37). Such conduct would be covered by even a three-year statute of limitations, which would extend back to January 21, 2015.

At summary judgment, "[u]nder [the McDonnell Douglas ] framework, a plaintiff must first establish a prima facie case of discrimination. A plaintiff's burden at this stage is minimal. If a plaintiff meets her burden at this stage, a temporary presumption of discrimination arises, and the burden shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for the challenged conduct. If the defendant-employer articulates such a reason, the burden shifts back to the plaintiff-employee to show that the defendant-employer's reason was pretext." Richard , 2017 WL 1232498, at *5 (quotations and citations omitted).

Further, "[t]o state a claim under § 1983, a plaintiff ... must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins , 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Sosa alleges, in each of her § 1983 claims, that Defendants were "acting 'under color of state law' " when engaging in misconduct against her, (Sosa II Compl. ¶¶ 73, 77, 81), and thus this element is satisfied as to Sosa's § 1983 claims.

Sosa does allege that the allegations of professional misconduct affected her "reputation, financial remunerations, privileges and ultimately her wages as a teacher." (Sosa II Compl. ¶ 62). These non-specific and conclusory allegations are not enough, even to survive a motion to dismiss. E.g. , Hernandez v. City of New York , No. 11-CV-3521, 2013 WL 593450, at *3 (E.D.N.Y. Feb. 13, 2013) (finding allegations of adverse employment actions conclusory and thus determining Plaintiff failed to state a plausible claim). To the extent that this allegation reflects a summary of the specific actions that Sosa alleges constitute adverse employment actions, for the reasons stated above, they do not amount to a material change in the conditions of her employment.

As discussed below, however, the definition of adverse employment action in the context of a retaliation claim is more lenient than in this context. See infra Part III.D.

What constitutes "all material respects" "must be judged based on ... whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards[.]" Graham , 230 F.3d at 40. When determining whether employees are similarly situated, courts consider characteristics including "the employees' education, work experience, and specific work duties." McPherson v. NYP Holdings, Inc. , No. 03-CV-4517, 2005 WL 2129172, at *4 (E.D.N.Y. Sept. 1, 2005), aff'd , 227 F. App'x 51 (2d Cir. 2007) ; see also Ruiz v. County of Rockland , 609 F.3d 486, 493-94 (2d Cir. 2010) (indicating employees are similarly situated if they are "(1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct") (quotations omitted).

Section 1981 retaliation claims are analyzed under the same framework and standards as Title VII claims of retaliation. See Amaya , 295 F. Supp. 3d at 226 ("As with discrimination claims, retaliation claims alleged under § 1981 are subject to the same analysis as those alleged under Title VII.") (collecting cases).

Several of the cases to which Defendants cite in their motion, such as McCullough v. Xerox Corp. , 942 F. Supp. 2d 380, 387-88 (W.D.N.Y. 2013), (see Mot. to Dismiss Mem. at 24), erroneously define adverse employment action in the retaliation context as one that changes the terms and conditions of employment.

Defendants contend that Sosa cannot "bootstrap" failure to accommodate to a disability retaliation claim and that "reasonable accommodation requests are not protected activities" under state or city law. (Mot. to Dismiss Mem. at 24). However, Sosa does not allege the request for accommodation is the protected activity against which Defendants retaliated; she alleges Defendants retaliated due to Sosa I . (Sosa II Compl. ¶ 31).

In her briefs, Sosa does attempt to demonstrate retaliatory animus by pointing to the same facts she alleges in her discrimination, hostile work environment, and disparate treatment claims. (See Sosa Resp. Mem. at 15-17). However, as discussed above, these claims do not survive the motion to dismiss and thus do not create an inference of discriminatory intent.

It may well be that the prosecution of a lawsuit narrows the length of temporal proximity required to infer causation, as the events in the litigation could be closer in time to the alleged retaliatory acts than the mere filing of the lawsuit. E.g. , Pediford-Aziz v. City of New York , 170 F. Supp. 3d 480, 486 (E.D.N.Y. 2016). However, in this case, that is not an argument Sosa has asserted in her motion papers. (See generally Sosa Resp. Mem.; Pl.'s Sur-Reply Mem. in Opp'n to Def.'s Mot. to Dismiss dated Aug. 6, 2018, Dkt. No. 26). Any hint of such an argument in Sosa's Complaint, (see, e.g., Sosa II Compl. ¶ 31 ("The legal battles between the parties in Civil Action 07094 have been precursors for many of defendants' retaliatory and discriminatory actions against plaintiff.") ), does not suffice. The non-specific nature of the allegations is insufficient to connect the ongoing litigation in Sosa I with alleged ongoing retaliation.

Because all of Sosa's § 1981 and § 1983 claims have been dismissed, the Court need not address Defendants' argument that the NYCDOE cannot be held liable under these statutes on the basis of respondeat superior, pursuant to Monell v. Dep't of Soc. Servs. , 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). (See Mot. to Dismiss Mem. at 8).

For Counts 5, 6, and 7, Sosa uses a heading indicating her allegations are against Defendant NYCDOE only; however, the descriptions for these claims allege that "Defendants" subjected her to discrimination, hostile work environment, and retaliation. (Sosa II Compl. ¶¶ 87, 90, 93). Because there can be no individual liability under Title VII, Spiegel v. Schulmann , 604 F.3d 72, 79 (2d Cir. 2010), the Court will analyze all of Sosa's Title VII claims as being brought against the NYCDOE only.

For example, as part of what Defendants label as failure to exhaust, they argue Sosa's "claims arising before March 18, 2016 are untimely" because they occurred more than 300 days before her EEOC Complaint was filed. (Reply to Nov. 13 Order at 2). Defendants then proceed to point out which of Sosa's allegations are untimely, (id. at 3-4), and why they do not constitute part of the hostile work environment claim that Sosa did timely file, (id. at 5-6). This misapprehends the administrative exhaustion requirement and the purpose of the Court's inquiry, which was to clarify whether Sosa's EEOC Complaint had adequately notified Defendants of her race, skin color, and national origin discrimination claims.

Count 18 alleges violations of both the ADA and NYSHRL. The Court will consider the NYSHRL in the state-law section below.

Sosa's failure to accommodate claim under the ADA survived summary judgment in Sosa I to the extent it was based on Defendants' failure to grant her requested lunch schedule. (Sosa I Sept. Order at 15-16). The Complaint in this case, however, stands on different footing. In this case, the failure to accommodate is based on the 2016 school year; Sosa I is based on the school years from 2011-2014. (Compare Sosa II Compl. ¶ 39, with Sosa I Sept. Order at 2-8). Moreover, in this case the only accommodation not provided is a single prep period on one day of the week; Sosa I appears to be predicated on a failure to provide Sosa with her requested lunch schedule every day of the week. (See Sosa I Sept. Order at 7-8). Finally, in Sosa I defendants did not argue that there was no adverse action, but rather that Sosa was not disabled. (See id. at 15).

An adverse employment action for an ADA retaliation claim is, like under Title VII, a broader standard than in a general discrimination claim. The action need not materially change the terms and conditions of employment to meet this standard. Vale , 80 F. Supp. 3d at 439-440 ("[U]nlike claims of discrimination, which limit what qualifies as an adverse employment action to changes in the terms and conditions of employment, adverse employment actions in the context of a claim of retaliation are much broader. The applicable test in the retaliation context is that a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.") (quotations and citations omitted).